## STATE OF CONNECTICUT *v.* LAWRENCE RUSCOE
### (AC 29198)

Flynn, C. J., and DiPentima and West, Js.

Argued October 13, 2009—officially released March 16, 2010

*Alice Osedach,* assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Michael A. DeJoseph,* assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Lawrence Ruscoe, appeals from the judgment of conviction, rendered after a jury trial, of possession of marijuana with intent to sell or dispense in violation of General Statutes § 21a-277 (b), possession of marijuana with intent to sell or dispense within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), possession of narcotics with intent to sell or dispense in violation of General Statutes § 21a-277 (a) and possession of narcotics with intent to sell or dispense within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss, which was based on the denial of his request for a speedy trial,[1] (2) excluded evidence during the hearing

---

[1] The defendant also argues on appeal that the court improperly denied his motion for a speedy trial pursuant to General Statutes § 54-82c. This claim was pursued with a subsequent motion to dismiss, the denial of which the defendant appeals from and we address herein. See part I of this opinion. Because we determine that the motion to dismiss was denied properly, the issue of the denial of the motion for a speedy trial is immaterial to our disposition of this case. Therefore, we decline to review the defendant's claim that the court improperly denied his motion for a speedy trial because even if the court's denial of the defendant's motion for a speedy trial were improper, it would not compel a reversal in light of the subsequent procedural events.

on his motion to dismiss and (3) upheld the validity of a warrant for the search of a Norwalk garage in which he had sold narcotics. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of the defendant's claims. On October 29, 2004, Norwalk police officers arrived at 6 South Smith Street, Norwalk, to execute a search and seizure warrant for that location. Upon arriving, officers found the defendant, arrested him pursuant to an outstanding arrest warrant and conducted a search of the defendant's person. A cellular telephone and $2127 in United States currency were recovered. Police then searched an office area attached to a garage on the premises, pursuant to the search warrant, where they found small ziplock bags inside a desk drawer. Inside another drawer, officers found a locked metal box. The defendant gave the officers the correct combination for the locked box. Inside of the locked box, the officers found nineteen small plastic bags containing a green leafy substance, a plastic container holding 111 pills, all marked "Myelin 4-7-7," mail addressed to the defendant and a small digital scale. A later scientific analysis by the state toxicology lab determined that the green leafy substance was marijuana, and that the pills were diazepam, a generic version of the narcotic valium.

On November 1, 2004, the defendant was charged with eight counts relating to the possession of various illegal substances.[2] On the same date, attorney James M. Lamontagne of the public defender's office was appointed to represent the defendant. On November 10, 2004, while incarcerated for unrelated charges, the defendant sent a request for a speedy trial to the clerk's

---

[2] On October 6, 2006, the state filed a four count substitute information that also related to the defendant's possession of various illegal substances.

office. On November 16, 2004, the court denied the defendant's motion for a speedy trial.

On October 30, 2006, the defendant filed a motion to dismiss on the ground that he was denied a speedy trial. On November 2, 2007, after an evidentiary hearing, the court rejected the defendant's argument that he was effectively denied a speedy trial and denied the defendant's motion to dismiss.

On May 9, 2007, following a jury trial, the defendant was found guilty of all four counts against him. He was sentenced to a total effective term of eight years and one day incarceration followed by eight years special parole. On September 13, 2007, the defendant appealed his conviction to this court. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the court improperly denied his motion to dismiss on the basis of the court's earlier denial of his request for a speedy trial. Specifically, he claims that because the court improperly denied his request for a speedy trial and he was not brought to trial within 120 days of his request, and that he was not notified of the denial of the request within that time period, the court no longer had jurisdiction over his case. We conclude that the court properly exercised its discretion to deny the defendant's motion to dismiss.

We begin by noting the standard that this court applies in reviewing a trial court's ruling on a motion to dismiss. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will

be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 477–78, 964 A.2d 73 (2008).

Thus, in order to determine the appropriate standard of review for the defendant's claim in the present case, "we first must ascertain whether the defendant is truly challenging the trial court's interpretation of the pertinent law, in which case our review is plenary . . . or whether he is actually disputing the court's factual findings, in which case we review those findings for clear error." (Internal quotation marks omitted.) Id., 481.

The following facts are relevant to the disposition of the defendant's claim. On October 30, 2006, the defendant filed a motion to dismiss on the basis of the denial of his motion for a speedy trial. The motion alleged that notice of the denial never reached the defendant and that he first learned that his speedy trial motion had been denied after inquiring about it in open court in September, 2005. On April 2, 2007, a hearing on the motion to dismiss took place. The defendant called two witnesses to testify at the hearing: Kathleen Roach, a secretary for the public defender's office and Lamontagne, who was counsel to the defendant at the time that the speedy trial motion was denied. In its memorandum of decision on the defendant's motion to dismiss, the court made the factual finding that "Lamontagne, who made a very credible witness at the hearing, received notice of the decision on the motion for a speedy trial on or about November 16, 2004, and he personally informed the defendant of the denial of the motion on November 29, 2004." On the basis of that

factual finding, the court rejected the defendant's claim that he was denied a speedy trial by not being notified of the court's ruling in a timely manner. Thus, because the denial of the motion to dismiss was premised on this factual finding and not on the legal sufficiency of the court's denial of the motion for a speedy trial, we review under the clearly erroneous standard the defendant's claim that the motion to dismiss was denied improperly. See id.

Upon a review of the record, we conclude that there was sufficient evidence for the court to make the factual finding about the date that the defendant was notified of the denial of the motion for a speedy trial and, in turn, the legal determination to deny the defendant's motion to dismiss. The defendant's primary claim in the motion to dismiss was that the harm occurred when he was not notified of the denial of his speedy trial motion for an extended period of time. Therefore, we conclude that the court's denial of the motion to dismiss on the grounds that were raised was not clear error.

II

The defendant next claims that the court improperly excluded evidence during the hearing on his motion to dismiss. The defendant specifically claims that the court improperly sustained the prosecution's objection to admitting into evidence a letter purportedly written by the defendant to Lamontagne. We decline to review this claim.

During the evidentiary hearing on the motion to dismiss, the defendant called Lamontagne to testify. During direct examination, Lamontagne identified a letter that he had received, in the mail, from the defendant. The defendant offered this letter as a full exhibit. The state objected on the basis of hearsay and a lack of foundation. The state conducted a voir dire of Lamontagne and renewed its objection on the basis of the

same evidentiary issues. Defense counsel responded: "I think he did, identified it as received from [the defendant]. On the hearsay issue, it's clear that he received it in the conduct of his duties as a public defender. So, I would . . . file it as work product." The court sustained the objection.

It is not entirely clear on what basis the court sustained the objection to the admission of the letter into evidence. The court stated, "I don't think I need a handwriting expert if he were to identify it as the letter he received," but it did not expand any further on the legal principles argued by the parties within its ruling.

The state asserts that the record is inadequate for review of the defendant's claim. We agree. It is well settled that it is the duty of the appellant to provide this court with an adequate record to review his claims. See Practice Book §§ 60-5 and 61-10. Accordingly, "[a] lack of pertinent factual findings and legal conclusions will render a record inadequate." (Internal quotation marks omitted.) *State* v. *Sargent*, 87 Conn. App. 24, 30, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). "Similarly, ambiguity in a record can render it inadequate." *State* v. *Salerno*, 36 Conn. App. 161, 165, 649 A.2d 801 (1994), appeal dismissed, 235 Conn. 405, 666 A.2d 821 (1995).

After reviewing the record, we cannot discern the reasoning of the court when it sustained the state's objection. Our review reveals that the court did not articulate any specific legal conclusions regarding the inadmissibility of the letter. Defense counsel failed either to inquire as to the basis on which the objection to admitting the letter as a full exhibit was sustained or to expand the questioning of the witness in an attempt to overcome the court's concerns, either of which may have elicited the basis of the ruling. Without this information, we decline to review the defendant's claim.

## III

Last, the defendant claims that the court improperly upheld the validity of the warrant to search the Norwalk garage. Specifically, the defendant claims that the warrant did not provide a sufficient factual basis to find probable cause to search for marijuana or the other items seized, and that the warrant was too broad in that it authorized the search and seizure of items that were not particularly described. We disagree.

The following facts and procedural history are relevant to the disposition of the defendant's claim. The affidavit for the search warrant alleged the following: On October 27, 2004 . . . Frank Corcoran . . . was arrested by the Norwalk Police Department on charges of burglary. During an interview with officers, Corcoran stated, among other things,[3] that he had purchased narcotics from the defendant in the past, including the day before, at the defendant's garage at 6 South Smith Street in Norwalk. On October 27, 2004, Corcoran was searched for any drugs or contraband by Norwalk police, neither of which were found on his person. Officers attached a wireless transmitter to Corcoran's person, and they gave Corcoran money from the Norwalk police funds. Officers transported Corcoran to South Smith Street, where Officer Salvator Calise observed Corcoran entering a garage. Several minutes later, Corcoran exited the garage and met the officers at a predetermined location, where Corcoran turned over crack cocaine to Officer Terrence P. Blake.[4] Corcoran stated

---

[3] Corcoran also stated that the defendant had stolen a Cadillac in a burglary in Rowayton in October, 2004. Corcoran stated that the vehicle was currently located in the commuter lot off of Hendricks Avenue in Norwalk, adjacent to Interstate 95. After checking police records, the officers found a report of a burglary that had occurred at 1 Range Road in Rowayton on October 2, 2004, in which a 1998 Cadillac El Dorado was stolen. On October 27, 2004, a Norwalk police sergeant located the same Cadillac in the commuter lot off of Hendricks Avenue, as Corcoran had described.

[4] The substance was later field tested positive for the presence of cocaine.

that he had bought the crack cocaine from a black male who was inside of the garage but that the defendant was not present. Later on October 27, 2004, Officer Blake submitted an application for a search and seizure warrant, which was granted.

On October 30, 2006, the defendant filed a motion to suppress evidence collected under execution of the search warrant, alleging that there was no probable cause established in the search warrant, the warrant was overly broad and the broad description allowed a blind search of the premises. On April 3, 2007, the court denied the defendant's motion to suppress evidence. In its subsequent memorandum of decision, the court discussed the facts present in the detailed affidavit that gave rise to the probable cause for the search warrant and concluded that those facts were sufficient to establish probable cause. The court also determined that the list of items sought to be seized was not overly broad because "the items specifically identified common, well-known tools of the drug trade, items commonly associated with the illegal possession and distribution of drugs, and one could identify the property sought to be seized with reasonable certainty." On the basis of these determinations, the court denied the defendant's motion to suppress.

Before addressing the defendant's claims, we set forth the proper standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001).

A

We first address the defendant's claim that there was not probable cause to search for marijuana and the other items seized pursuant to the search warrant. "The fourth amendment to the United States constitution provides in relevant part that no warrants shall issue, but upon probable cause . . . . We uphold the validity of [a search] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. . . . [T]he magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Whe[n] the circumstances for finding probable cause are detailed, whe[n] a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories. . . .

"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . In determining the existence of probable cause to search, the issuing magistrate assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and

reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on [that] issue, therefore, is subject to plenary review on appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 115 Conn. App. 581, 591–92, 974 A.2d 72, cert. denied, 293 Conn. 916, 979 A.2d 492 (2009).

The extensive affidavit included with the application for the search warrant provided sufficient, corroborated evidence for the court to have granted the requested warrant. The affidavit identified the informant, gave several details regarding the informant's knowledge of the defendant's drug related activities and detailed police corroboration of those drug related activities. The warrant authorized police officers to search for "narcotics, heroin, cocaine, PCP, LSD, marijuana,"[5] as well as a variety of other specific items related to the drug trade, including "any other items which can reasonably be construed to facilitate the trafficking of illegal narcotics." A search for items connected to drug trafficking is supported by the facts found in the affidavit. The court found that "[t]he application specifically set forth facts substantiating continuing criminal drug activity at the garage . . . and was sufficiently particular in its description of the items to be seized." The record presents a substantial factual basis for granting the search warrant application, including "Corcoran's statement that [the defendant] sells crack cocaine, marijuana and prescription drugs out of the [location to be searched]." As the court ruled, "[i]t was . . . reasonable to believe that the garage was

---

[5] PCP is also known as phencyclidine; *State* v. *Holloway*, 117 Conn. App. 798, 805, 982 A.2d 231 (2009); and LSD is also known as lysergic acid diethylamide. *State* v. *Ryan*, 182 Conn. 335, 336 n.2, 438 A.2d 107 (1980).

a secure operational base for ongoing drug traffic, that the items sought to be seized were tools of the trade, which would reasonably be expected to be at the garage, and that the facts stated in the affidavit provided a substantial basis for the conclusion that there was a fair probability of continuing illegal drug sales at the garage." Further, "[t]he affidavit set forth facts to establish that the informant, and the information provided by him, were reliable." We conclude that the court properly found that there was probable cause to search for marijuana and all of the other items in the warrant and denied the defendant's motion to suppress.

## B

Finally, we address the defendant's claims that the search warrant was too broad and that it was not specific enough to be valid. "The particularity clause of the fourth amendment provides that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const., amend. IV. The protections afforded by the particularity clause focus primarily on, and restrict the process of, issuing a warrant. . . . This focus makes sense in light of the chief purpose of the clause, which is to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." (Citations omitted; internal quotation marks omitted.) *State* v. *Browne*, 291 Conn. 720, 729, 970 A.2d 81 (2009).

Upon a review of the record, we find that the court correctly determined that "the items listed were specific and described common tools of the drug trade," and the warrant was "sufficiently particular in its description of the items to be seized." The court rejected the argument that the description of the items to be seized was overly

broad, finding that the items "specifically identified common, well-known tools of the drug trade, items commonly associated with the illegal possession and distribution of drugs, and one could identify the property sought to be seized with reasonable certainty." The court ruled that "[t]he affidavit established a factual basis to support a finding of probable cause to believe that the items sought to be seized constituted evidence of criminal activity and that the items sought existed at the 6 South Smith Street garage location." A review of the record reveals that the search warrant was specific as to the items to be searched for and was not overly broad based on the evidence sought to be obtained, as detailed in the affidavit. Accordingly, we conclude that the court properly found that the warrant was sufficiently particular and properly denied the motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.