******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHARLES WILLIAMS
(AC 37923)

Lavine, Alvord and Beach, Js.

*Argued February 14—officially released May 9, 2017*

(Appeal from Superior Court, judicial district of Hartford, Suarez, J. [motion for recusal]; Alexander, J. [plea proceeding].)

*Donald F. Meehan*, assigned counsel, with whom, on the brief, was *Walter C. Bansley IV*, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Donna Mambrino*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Charles Williams, appeals from the judgment of conviction, rendered after a jury trial, of one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95. The jury found the defendant not guilty of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). Following the jury verdict, the defendant pleaded guilty to being a persistent serious offender in violation of General Statutes § 53a-40 (c). On appeal, the defendant claims that (1) there was insufficient evidence presented at trial to support his conviction of unlawful restraint in the first degree; (2) the trial court abused its discretion by denying his motion to reconsider his oral motion for recusal; and (3) the prosecutor violated his right to a fair trial by committed certain improprieties during closing argument. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The victim[1] and the defendant met in 2001 and began dating in 2007. Over time, the defendant became physically, verbally, and emotionally abusive. On some occasions, the victim reported the defendant's abuse to the police, friends, or family, but, on other occasions, she did not report the abuse because she learned that she "had to kind of pick [her] battles" with the defendant. In April, 2012, the victim decided to end her relationship with the defendant. The defendant was upset and began stalking the victim. During this period, the victim and the defendant filed police reports against each other, and, as a result of one of the defendant's complaints, the victim was criminally charged.[2]

The victim thereafter moved from Bloomfield to Hartford and changed her phone number on several occasions. Nevertheless, the defendant continued to come to the victim's house and call her even though the victim told him that she did not want to be in a relationship with him and that she wanted him to stop contacting her. When confronting the victim, the defendant would often threaten to call the police and make false reports so that she would be taken away from her family.[3] During this period, the victim acquiesced on several occasions to having sexual intercourse with the defendant because she knew that he would leave her house afterward.

On February 14, 2013, the victim was at home with her infant grandson (February 14 incident). The victim put her grandson down for his nap in her bedroom at 10 a.m. Sometime thereafter, while the victim's grandson was still napping, the defendant arrived at her house and began yelling at her because he believed that she was sleeping with other men. The victim asked the defendant to leave her house, but he continued to yell

at her. The victim told the defendant that she was not sleeping with anyone else and asked him to speak more quietly because her grandson was taking his nap. The defendant demanded sexual intercourse and threatened to file a false police report against the victim if she did not have sexual intercourse with him.

As the defendant advanced on her, the victim backed away from the defendant and into her bedroom. Following her into the bedroom, the defendant pulled a knife out of his pocket and told the victim to "stop acting up." The victim again asked the defendant to leave, but the defendant told the victim to perform oral sex on him because it was Valentine's Day. When the victim continued to refuse, the defendant grabbed the victim by her hair and threw her down on the bed, and the victim fell onto the floor.

The victim began performing oral sex on the defendant. When the victim began crying, the defendant became angry and ordered her to stop crying because she was "making [him] soft." When the victim continued to cry, the defendant threw her on the bed, pulled down her pants, and vaginally penetrated her from behind while holding her down on the bed by her arms. When the victim heard her grandson crying, she asked the defendant to stop, but he continued to penetrate her until he ejaculated. The defendant complained that the victim "ruined his sex" and then left her house.

On February 28, 2013, the defendant returned to the victim's house while she was there with her daughters and grandsons (February 28 incident). The defendant demanded to know her new phone number and with whom she was having sexual intercourse. The situation escalated and the defendant punched the victim in the face, breaking her nose. Thereafter, the defendant left her house. The victim did not want to report the incident to the police, but one of her daughters called the police that same day. Although the victim spoke to the investigating officer and identified her assailant as a former boyfriend, she refused to provide the defendant's name at that time because she was afraid of him.

Following the February 28 incident, the victim began living in domestic violence shelters and stopped going to her house and telling people where she was living in an attempt to get away from the defendant. During this period, the victim received medical and psychological treatment. Assisted by the psychological treatment she was receiving, in April, 2013, the victim decided to identify the defendant as her assailant in the February 28 incident. In September, 2013, the victim further reported the February 14 incident to the police.

The defendant was arrested in connection with the February 14 incident and charged with two counts of sexual assault in the first degree and one count of unlawful restraint in the first degree. While the defen-

dant was incarcerated and awaiting trial, he frequently spoke about his case with Elon Henry, a fellow inmate with whom he was previously acquainted. On December 5, 2014, three days before the defendant's trial was scheduled to commence, the defendant told Henry that "this girl [i.e., the victim] got me going through it right now. I'm a kill this girl . . . with my bare hands, and if I don't kill her I'm a get close and I'm a make her give me head for like an hour this time." The threatening manner in which the defendant spoke concerned Henry, and he reported the defendant's statement to a correctional officer that evening.

Trial commenced on December 8, 2014. The defendant presented an alibi defense, supported by his own testimony and the testimony of his mother, his sister, his nephew, and his girlfriend's cousin. The jury found the defendant guilty of unlawful restraint in the first degree but not guilty of the two counts of sexual assault in the first degree. Following the jury verdict, the defendant pleaded guilty to being a persistent serious felony offender. The defendant was sentenced to ten years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

We begin with the defendant's claim that there was insufficient evidence presented at trial to convict him of unlawful restraint in the first degree. Specifically, the defendant claims that there was insufficient evidence as to the elements of restraint and intent.[4] We disagree.

We begin with the standard of review and legal principles that guide our analysis.[5] "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable

doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015).

"A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." General Statutes § 53a-95 (a). "[T]he hallmark of an unlawful restraint . . . is a restraint." *State* v. *Salamon*, 287 Conn. 509, 530, 949 A.2d 1092 (2008). "As applicable to § 53a-95 (a), [p]ersons are restrained when their movements are intentionally restricted so as substantially to interfere with their liberty, either (1) by moving them from one place to another, or (2) by confining them either to the place where the restriction commences or to the place where they have been moved without their consent. General Statutes § 53a-91 (1)." (Internal quotation marks omitted.) *State* v. *Youngs*, 97 Conn. App. 348, 354, 904 A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006).

Furthermore, unlawful restraint in the first degree requires that the defendant had the specific intent to restrain the victim. *State* v. *Salamon*, supra, 287 Conn. 570. Specific intent is "an intent to bring about a certain result." Id., 572. Thus, to prove unlawful restraint in the first degree, the state must also "establish that the defendant had restricted the victim's movements *intentionally and unlawfully* in such a manner as to interfere substantially with her liberty by confining her without her consent." (Emphasis in original; internal quotation marks omitted.) Id., 573.

"Because direct evidence of an accused's state of mind typically is not available, his intent often must be inferred from his conduct, other circumstantial evidence and rational inferences that may be drawn therefrom. . . . For example, intent may be inferred from the events leading up to, and immediately following, the conduct in question . . . the accused's physical acts and the general surrounding circumstances. . . . [W]hen a jury evaluates evidence of a defendant's intent, it properly rel[ies] on its common sense, experience and knowledge of human nature in drawing inferences and reaching conclusions of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Winot*, 294 Conn. 753, 768, 988 A.2d 188 (2010).

In support of his claim, the defendant argues that there was insufficient evidence to convict him of unlawful restraint because the charge was based on the victim's testimony, which the jury necessarily discredited

because it found him not guilty of the two counts of sexual assault in the first degree. The defendant's argument fails to recognize that in determining the credibility of witnesses the jury may decide "what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Victor C.*, 145 Conn. App. 54, 61, 75 A.3d 48, cert. denied, 310 Conn. 933, 78 A.3d 859 (2013). On appeal "[w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290 Conn. 904, 962 A.2d 794 (2009).

The dispositive question before this court is whether the victim's testimony provided the jury with a reasonable basis on which it could conclude that the state proved beyond a reasonable doubt each of the elements of § 53a-95 (a) and, thus, provided the jury with a sufficient basis on which it could find the defendant guilty of that charge. See *State* v. *Victor C.*, supra, 145 Conn. App. 61 ("the jury may find a defendant guilty based solely on the testimony of one witness"). At trial, the victim testified that during the course of her encounter with the defendant on February 14, she repeatedly asked him to leave her house and repeatedly refused his requests for sexual intercourse. Once their argument moved to her bedroom, the defendant pulled out a knife, told her, "stop acting up," and asked her to perform oral sex. When she continued to refuse, he grabbed her by the hair and threw her onto her bed. Thereafter, the victim submitted to performing oral sex. When her crying upset the defendant, however, he picked her up and pinned her on the bed by her arms so that he could penetrate her vaginally from behind, and he continued to hold her on the bed even after she asked him to stop.

Viewing this testimony as we must, in a light most favorable to sustaining the jury's verdict, we conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant intentionally and unlawfully restricted the victim's movements in such a manner as to interfere substantially with her liberty. Cf. *State* v. *Rice*, 167 Conn. App. 615, 621–22, 142 A.3d 1267 (defendant, while trying to determine whether victim stole his bag, briefly held victim's hand, blocked her egress from restroom, and discouraged her from calling for help), cert. denied, 323 Conn. 932, 150 A.3d 232 (2016); *State* v. *Jason B.*, supra, 111 Conn. App. 366 (defendant grabbed victim her by arm and pulled her back into car as well as held his hand over her face to prevent her from breathing, pinned her arm behind her head, and climbed on top of her against her will); *State* v. *Pauling*, 102 Conn. App. 556, 565–66, 925 A.2d 1200

(defendant slapped victim, struggled with her, grabbed her by throat, and threw her onto bed), cert. denied, 284 Conn. 924, 933 A.2d 727 (2007); *State* v. *Luster*, 48 Conn. App. 872, 880–81, 713 A.2d 277 (elderly victim struggled with and resisted defendant, who was on top of her and using force to keep her in bed), cert. denied, 246 Conn. 901, 717 A.2d 239 (1998). Accordingly, there was sufficient evidence to convict the defendant of unlawful restraint in the first degree.

## II

We next address the defendant's claim that the court abused its discretion by denying his "motion to reconsider [his] oral motion for recusal." The state responds that the defendant's claim is unreviewable because he failed to provide an adequate record for review. We agree with the state.

The following additional facts are relevant to this claim. On December 1, 2014, the defendant orally asked the court to recuse itself because the court had presided over his violation of probation hearing one year earlier and had found him to be in violation of his probation. That same day, the court orally denied the defendant's motion. On December 5, 2014, three days before the commencement of trial, the defendant filed a written motion to reconsider his oral motion for recusal (motion for reconsideration). On December 8, 2014, the court, without hearing further from either party, stated that it had granted the defendant's motion for reconsideration, reconsidered the issue, and denied the relief requested therein for the same reasons articulated in its December 1, 2014 oral ruling, which the court then briefly summarized.[6]

Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

We have previously held that "Practice Book § 1-23 creates a mandatory procedure to be followed by any party seeking to recuse a judge . . . and, if a party fails to follow such procedures, the record is deemed to be inadequate for our review because they are a condition precedent to a hearing on a judge's disqualification. . . . Further, [r]epresentations made by counsel are not evidence in the record upon which we can rely in our review of the judge's conduct. . . . The lack of a recusal hearing leaves the record bereft of any factual basis upon which we may base our review." (Citations omitted; internal quotation marks omitted.) *Olson* v. *Olson*, 71 Conn. App. 826, 830, 804 A.2d 851 (2002);

accord *State* v. *Teel*, 42 Conn. App. 500, 506, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996); *State* v. *Weber*, 6 Conn. App. 407, 412–13, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986).

We conclude that the defendant has failed to provide an adequate record for review because he failed to follow the procedures in Practice Book § 1-23. Although the defendant filed a written motion for reconsideration and a certificate of good faith, he failed to provide "an affidavit setting forth the facts relied upon to show the grounds for disqualification" or good cause for his failure to file his motion "ten days before the time the case is called for trial or hearing . . . ." Practice Book § 1-23. In addition, the defendant has not provided this court with the transcript from the December 1, 2014 hearing. See footnote 4 of this opinion.[7] Because the court expressly relied on its December 1, 2014 oral ruling when denying the defendant's motion for reconsideration, it is impossible for this court to review the defendant's claim that the court abused its discretion by not recusing itself without knowing the full factual and legal basis for the court's December 1, 2014 ruling. See *State* v. *Ruscoe*, 119 Conn. App. 834, 841, 989 A.2d 667 ("[a] lack of pertinent factual findings and legal conclusions will render a record inadequate" [internal quotation marks omitted]), cert. denied, 296 Conn. 903, 992 A.2d 330 (2010).

Accordingly, we decline to review the defendant's claim because the record is inadequate for review.

### III

The defendant's final claim is that the prosecutor committed certain improprieties during closing argument and thereby deprived him of his constitutional right to a fair trial. In particular, the defendant claims that during rebuttal argument the prosecutor improperly (1) appealed to the emotions, passions, and prejudices of the jury, (2) asked the jury to identify with the victim, and (3) referred to a document not in evidence.[8] The state responds that the defendant's claims are inadequately briefed or, alternatively, that they fail on the merits. Although the defendant's claims of prosecutorial impropriety are adequately briefed for appellate review, we conclude that he has failed to establish that the prosecutor committed any improprieties during closing argument. Accordingly, we reject the defendant's claims.

We review claims of prosecutorial impropriety under a two step analytical process. "The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fair-

ness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry." (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007). "The defendant bears the burden of satisfying both of these analytical steps." *State* v. *O'Brien-Veader*, 318 Conn. 514, 524, 122 A.3d 555 (2015).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . [B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Elias V.*, 168 Conn. App. 321, 347, 147 A.3d 1102, cert. denied, 323 Conn. 938, 151 A.3d 386 (2016).

A

The defendant first claims that the prosecutor improperly appealed to the jury's emotions and improperly asked the jury to identify with the victim when she argued: "It's a coping mechanism. You may not have done it. I certainly would never have done it, but that's here." The state responds that this remark, when viewed in context, was a proper counterargument to the defendant's suggestion that the defendant and the victim were engaged in a consensual sexual relationship. We agree with the state.

Our Supreme Court "has recognized on numerous occasions that [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Long*, 293 Conn. 31, 54, 975 A.2d 660 (2009). An improper appeal to the jurors' emotions can take the form of "a plea for sympathy for the victim . . . ." Id., 59.

During closing argument in the present case, defense counsel highlighted the victim's testimony that "all the way up until February 14, 2013, she was in a consensual sexual relationship with [the defendant]." In response, during rebuttal argument, the prosecutor made the following remarks: "[The defendant] claims they had a consensual sexual relationship prior to this. You use your own judgment. Do you think it's consensual when

someone is repeatedly abusing you verbally, physically, yelling at you, who you sleeping with, who you sleeping with when the whole time they're not boyfriend and girlfriend anymore. He's got a girlfriend. He has a child. And he repeatedly comes over and harps on this over and over and over again. Who you sleeping with? Who you sleeping with? Just tell me the truth. The same thing, and then he said, well, if you're not sleeping with anybody, then you could sleep with me. She just gives in. That's not consensual sex, ladies and gentlemen. She told you the reasons she gave in was just to [get] rid [of] him. And every time she did it, he left. That was her way of coping. *It's a coping mechanism. You may not have done it. I certainly would never have done it, but that's here.* That's a woman who's been in this relationship for seven years. It's her coping mechanism." (Emphasis added.)

The defendant argues that the emphasized remarks by the prosecutor improperly suggested to the jury that the victim's prior sexual relationship with the defendant was "something other than consensual." The defendant contends that "[t]his manner of speaking to the jury is clearly for the sole purpose of evoking sympathy for the [victim] when she consented to sexual intercourse in the past, and evoking outrage at the [d]efendant for putting the complainant in a position of deciding whether or not to have consensual intercourse with him." We disagree.

The prosecutor's "coping mechanism" remark, when read in context, was not designed to encourage the jury to decide the case on the basis of sympathy for the victim rather than a rational appraisal of the evidence presented at trial. To the contrary, the purpose of the prosecutor's remark was to remind the jurors that they must review the evidence objectively and from the perspective of a reasonable person, rather than on the basis of their personal dislikes, opinions, or prejudices about the victim's actions. That is, the prosecutor was reminding the jurors that they must consider the evidence presented at trial concerning the victim's relationship and history with the defendant and then decide whether, on the basis of that evidence and their own common sense, it was reasonable to infer that the victim consented to sexual intercourse with the defendant on February 14, 2013.

We conclude therefore that the prosecutor's coping mechanism remark did not appeal improperly to the jurors' emotions or exhort them to decide the case on anything other than the evidence presented to them.

B

The defendant also claims that another portion of the prosecutor's remarks violates the prohibition against "golden rule" arguments.[9] The state responds that the prosecutor's remarks "did not violate the 'golden rule'

because they did not ask the jury to evaluate the case on something other than the evidence, such as emotion, passion, bias or sympathy." We agree with the state.

"[A] golden rule argument is one that urges jurors to put themselves in a particular party's place . . . or into a particular party's shoes. . . . Such arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. . . . They have also been equated to a request for sympathy. . . . The danger of these types of arguments lies in their [tendency] to pressure the jury to decide the issue of guilt or innocence on considerations apart from the evidence of the defendant's culpability." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, supra, 293 Conn. 53–54.

During the victim's testimony, an issue arose concerning whether the victim's testimony about the timing of the February 14 incident was inconsistent with her statement to the police. In particular, the victim testified that the February 14 incident occurred sometime after she put her grandson down for his nap at 10 a.m. During cross-examination, defense counsel attempted to impeach the victim's testimony by highlighting the fact that in her police statement she reported that the incident occurred in the "mid-afternoon," not at 10 a.m. The victim responded that she told the detective who took her statement that the incident occurred sometime between "[m]id to afternoon," which she understood to mean between 10 a.m., when she put her grandson down for his nap, and 2:30 p.m., when her daughter returned home from school. Defense counsel thereafter suggested that the victim changed the time frame of the February 14 incident to earlier in the day when she learned that the defendant claimed that he was picking up his mother from the hospital in the mid-afternoon.

During closing argument, defense counsel argued in relevant part that the victim was not credible because of this discrepancy between her testimony and her statement to the police about the timing of the February 14 incident. The prosecutor responded first by reviewing the victim's testimony concerning the timing of the February 14 incident, including the circumstances surrounding her statement to the police and her discussions with the prosecutor in preparation for trial. The prosecutor then made the following remarks: "*When someone comes into your house, and you know what's happened in the past with this man, you know what he's doing, he's screaming at you, he's yelling at you, he's telling you you're going to have sex, he's forcing you to give oral sex, he holds you down on the bed, he makes you have vaginal intercourse with him, while he's holding you down, while you're crying, while you're screaming, while your twenty-two month old grandson is in that room crying and screaming,*

*do you stop and look at the clock? Do you make note of it while that trauma is happening to you?* Absolutely not. It's totally unreasonable to have this woman note exactly what time it is. And it's not for another seven months does she tell the police. And she's narrowing it down as best she can. But who's going to remember exactly what time that happened and what time it ended? But look at the reverse, this defendant knows where he is all day long. All day long." (Emphasis added.)

The defendant argues that the emphasized remarks were improper golden rule arguments. In particular, the defendant argues that these remarks were an "attempt to have the [jurors] picture themselves in a bleak situation where they are being verbally, physically, and sexually assaulted by the [d]efendant," and then decide the case based on their emotional response." We disagree.

"[N]ot all arguments that ask jurors to place themselves in a particular party's situation implicate the prohibition on golden rule argument." *State* v. *Devito*, 159 Conn. App. 560, 579, 124 A.3d 14, cert. denied, 319 Conn. 947, 125 A.3d 1012 (2015). "The animating principle behind the prohibition on golden rule arguments is that jurors should be encouraged to decide cases on the basis of the facts as they find them, and reasonable inferences drawn from those facts, rather than by any incitement to act out of passion or sympathy for or against any party." *State* v. *Long*, supra, 293 Conn. 57–58. Accordingly, our courts have repeatedly held that a prosecutor does not violate the golden rule by using the pronoun "you" or by asking the jurors to place themselves in the position of the witness if the prosecutor is using these rhetorical devices to ask the jury to assess the evidence from the standpoint of a reasonable person or to employ common sense in evaluating the evidence. See, e.g., *State* v. *Stephen J. R.*, 309 Conn. 586, 607, 72 A.3d 379 (2013); *State* v. *Long*, supra, 55–58; *State* v. *Bell*, 283 Conn. 748, 773–74, 931 A.2d 198 (2007); *State* v. *Devito*, supra, 578–80; *State* v. *Ovechka*, 118 Conn. App. 733, 745–46, 984 A.2d 796, cert. denied, 295 Conn. 905, 989 A.2d 120 (2010).

In the present case, the prosecutor's remarks on rebuttal were made in response to defense counsel's argument that the victim was not credible because she was inconsistent concerning the timing of the February 14 incident. The purpose of the prosecutor's remark was to encourage the jury to employ its common sense when determining whether, in light of the evidence presented at trial, it was reasonable for the victim to be imprecise or inconsistent concerning what time of day that the February 14 incident occurred. The defendant has failed to establish that these remarks, when read in context, appealed to the jurors' emotions or otherwise encouraged them to decide the case on something beyond the evidence presented at trial.

We conclude therefore that the prosecutor's remarks did not constitute an improper golden rule argument.

C

Finally, the defendant claims that the prosecutor improperly referred to the victim's police statement, which was not in evidence, and improperly tapped on and picked up the victim's police statement while referring to it. We disagree.

As we previously stated, an issue arose at trial concerning whether the victim's testimony about the timing of the February 14 incident was inconsistent with the statement she gave to the police. See part III B of this opinion. At trial, Detective Cheryl Gogins testified that she took the victim's statements concerning the February 14 and February 28 incidents. On cross-examination, Gogins testified that the victim reported that the February 14 incident occurred during the "mid-afternoon" and that she accurately memorialized that in the victim's statement. On redirect examination, Gogins explained that the victim "gave a fraction of a period of time, and that's how [the term] mid-afternoon came [about]. It was around a fraction of that timing." In particular, Gogins recalled that when she was trying to pinpoint the timing of the February 14 incident with the victim, "[the victim] stat[ed] that she had laid down her grandson to take a nap."

During her rebuttal argument, the prosecutor, when addressing the victim's purported inconsistency concerning the timing of the February 14 incident, made the following remark: "And remember the testimony of Detective Gogins when she was questioned with respect to the time because counsel made a big deal about the mid to afternoon. Okay. What does she say right after that? *It happened right after I put my grandson down for a nap. That's what she said in her statement to Detective Gogins, completely consistent with what I asked her.* I just narrowed it down." (Emphasis added.)

At the conclusion of closing arguments, the defendant raised five objections to the prosecutor's rebuttal argument, including an objection to the fact that the prosecutor purportedly tapped on and picked up the victim's police statement during these remarks. In response to the defendant's objection, however, the prosecutor did not state whether the document she picked up was her notes,[10] the victim's statement, or another document, and the court did not inquire into the nature of the document.[11]

On appeal, the defendant argues that the prosecutor improperly argued facts not in evidence by referencing and picking up the victim's police statement during closing argument. We disagree. First, it is axiomatic that in closing argument parties are permitted to rely on the evidence presented at trial. See *State* v. *Arline*, 223 Conn. 52, 58, 612 A.2d 755 (1992) ("[c]ounsel may

comment upon facts properly in evidence and upon reasonable inferences to be drawn from them" [emphasis omitted; internal quotation marks omitted]). In the present case, Gogins testified that the victim told her that the February 14 incident occurred after she put her grandson down for a nap. Accordingly, the prosecutor's remark, which expressly referenced Gogins' testimony, was not improper.

Second, the record is unclear as to what, if anything, the prosecutor picked up during her remarks about Gogins' testimony. When a defendant raises a claim of prosecutorial impropriety on appeal, the burden is on the defendant to prove first that the prosecutor committed an impropriety and second that the impropriety deprived him of a fair trial. *State* v. *Felix R.*, 319 Conn. 1, 8–9, 124 A.3d 871 (2015). As the record before us is ambiguous as to what, if anything, the prosecutor picked up during her remarks about Gogins' testimony, we conclude that the defendant failed to meet his burden of proving that the prosecutor improperly showed a document not in evidence to the jury during closing argument. See id., 9 ("when a prosecutor's potentially improper remarks are ambiguous, a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations" [internal quotation marks omitted]).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In furtherance of our policy of protecting the privacy interests of the subject of a criminal protective order, we refer to the protected person in this case only as the victim.

[2] In November, 2013, the state entered a nolle prosequi in the victim's case after a witness admitted to filing a false incident report and pleaded guilty to making a false statement.

[3] The victim has two daughters and two grandchildren. During the period in question, one of the victim's daughters was receiving chemotherapy treatment for cancer. To help her daughter, the victim often cared for her daughter's son.

[4] The defendant also challenges his conviction of unlawful restraint in the first degree on the grounds that it is factually and legally inconsistent with his acquittal of the charges of sexual assault in the first degree. Claims of factual and legal inconsistency between a conviction and an acquittal, however, are not reviewable unless there is evidence that the jury reached an inconsistent verdict as the result of juror misconduct. *State* v. *Arroyo*, 292 Conn. 558, 585 n.22, 586, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010). The defendant has neither argued nor presented any evidence that the jury reached an inconsistent verdict as a result of juror misconduct. Accordingly, we decline to review this claim.

[5] The defendant failed to preserve his claim at trial and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) . As we have previously stated, however, "[a]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Internal quotation marks omitted.) *State* v. *Pettigrew*, 124 Conn. App. 9, 29–30 n.13, 3 A.3d 148, cert. denied, 299 Conn. 916, 10 A.3d 1052 (2010).

[6] In particular, the court stated: "The cases that the court recited at the time [the defendant's oral motion to recuse] was raised I think still apply in this particular case. As I said . . . on the day that was raised, the mere fact that the court has ruled adversely on a proceeding does not necessarily mean that the court should recuse itself. In this particular case, the court heard a violation of probation here last year, found the defendant in violation. And in this particular case, it's an entirely different matter. It's . . . a sexual assault allegation that's going to be tried to a jury. This court will not be making findings of fact. It's the jury that's going to be finding those facts. The mere fact that a judge has previously ruled adversely does not necessarily recuse the judge. And for that reason, the court denied the . . . relief that was asked for . . . ."

[7] The defendant did not order the transcript for the December 1, 2014 hearing. Initially, the defendant maintained that the December 1 transcript was not necessary for the present appeal because he was challenging only the court's denial of his motion for reconsideration, but on February 17, 2017, after oral argument before this court, the defendant filed a motion requesting permission to file an additional transcript. The state objected, arguing that "filing of an additional transcript at this juncture changes the entire nature of the claims and arguments presented on appeal." On February 23, 2017, this court denied the defendant's motion.

In addition, the defendant did not order the transcripts of his violation of probation hearing on November 20 and 22, 2013 nor did he include these transcripts in his appendix to his opening brief. The state observed in its brief that although the defendant alluded to events that transpired at the November 22 hearing in his motion for reconsideration and his opening brief, the transcript from that hearing was not before the court on December 1 or 8, 2014, and, therefore, the transcript is not part of the record on appeal. The defendant then appended to his reply brief the redacted transcripts of his violation of probation hearing and asked this court to take judicial notice of them. Since filing his reply brief, the defendant has not ordered or filed these transcripts pursuant to Practice Book § 63-8.

[8] We note that following closing argument, defense counsel objected to some, but not all, of the improprieties claimed on appeal. The defendant's unpreserved claims are nevertheless reviewable. "We previously have recognized that a claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Gibson*, 302 Conn. 653, 658–59, 31 A.3d 346 (2011).

[9] To the extent that the defendant also claims that these remarks constituted an improper appeal to the jurors' emotions, we need not separately analyze the defendant's claim under both the prohibition against golden rule arguments and the prohibition against appealing to jurors' emotions because "the prohibition on golden rule arguments is merely a subset of this type of prosecutorial impropriety . . . ." *State* v. *Long*, 293 Conn. 56 n.21.

[10] We note that the prosecutor asked the jury during her opening argument to "excuse me for having to read a little bit of this because a lot of the evidence that came out today, I just had to write down quickly."

[11] The prosecutor misunderstood the nature of the defendant's objection at trial. She understood the defendant to be challenging the substance of her remarks rather than the act of lifting up a document, and, as a result, her response to this objection focused on the fact that Gogins testified that the victim told her the February 14 incident occurred after she put her grandson down for a nap.

The defendant in his brief suggests that the court found that the prosecutor had picked up a document not in evidence during closing argument and concluded that this conduct was improper. We disagree with the defendant's interpretation of the court's remarks. After the prosecutor concluded her argument, the court observed that it understood defense counsel to be objecting to the act of picking up a document during closing argument, not the substance of her remarks about Gogins' testimony, and defense counsel agreed. The court then stated that "the statement is not in evidence. . . . I'll have to address that" in the jury instructions and recessed proceedings for the day. The following trial day, the court informed the parties that it had considered the defendant's objections further and concluded that the prosecutor's conduct was "within the limits and the bounds of the prosecutorial closing argument."