******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DANOVAN T.*
(AC 38727)

Mullins, Beach and Harper, Js.

*Syllabus*

Convicted, following a jury trial, of the crime of risk of injury to a child, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his claim that the prosecutor committed improprieties that deprived him of a fair trial:

a. The prosecutor did not make an improper golden rule argument when he asked the jurors to put themselves in the defendant's position and to evaluate the defendant's statements against his claim of innocence; the prosecutor called on the jurors to draw inferences from the evidence and properly asked them whether a reasonable person would be likely to concede that there was a possibility that he sexually abused a child if he were actually innocent, and the statements were particularly appropriate as counterargument to the defendant's main defense theory that he did not commit the crime and that the allegations were fabricated.

b. Although the prosecutor made two misstatements during closing argument in describing certain medical testimony, they did not amount to improprieties; the misstatements, when placed in the broader context of the trial, were isolated and minor, the defendant did not present any evidence to demonstrate that they caused the jurors to be confused or to misunderstand certain testimony, and the prosecutor, who made the statements in the heat of argument, was afforded leeway for the minor misstatements made while zealously advocating for the state.

c. The defendant failed to demonstrate that the prosecutor acted improperly by facilitating the admission into evidence of a medical report that contained prior misconduct evidence, when the prosecutor previously represented that he would not present prior misconduct evidence; the report, which was admitted into evidence pursuant to an agreement of the parties, was not the only source of the jury's knowledge of the prior misconduct evidence, the defendant made extensive use of the report in his own closing argument, and the prosecutor's role in the admission of the report could not fairly be characterized as prosecutorial impropriety.

2. This court declined to review the defendant's claim that the trial court deprived him of his right to confront and to impeach the witnesses against him when the court precluded him from presenting certain testimony from himself and from L to contradict that of the victim's mother; the defendant having failed to make an argument before the trial court regarding the presentation of his own testimony as impeachment evidence, this court was not bound to consider the claim, and his claim with respect to the court's exclusion of L's testimony was moot, as the defendant failed to challenge the ground on which the trial court ruled in excluding L's testimony and, thus, an independent basis for the ruling remained unchallenged.

Argued April 17—officially released September 26, 2017

*Procedural History*

Substitute information charging the defendant with two counts of the crime of risk of injury to a child, and with the crime of sexual assault in the first degree, brought to the Superior Court in the judicial district of Hartford and tried to a jury before *Mullarkey, J.*; verdict of guilty of two counts of risk of injury to a child; thereafter, the state entered a nolle prosequi as to the charge of sexual assault in the first degree; subsequently, the court rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed*.

*Richard Emanuel*, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony Bochicchio*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Danovan T., appeals from his conviction of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). In this appeal, he argues that his conviction should be reversed because (1) certain improprieties by the prosecutor deprived him of his general due process right to a fair trial and (2) the trial court improperly restricted his right to present impeachment evidence against the state's witnesses, thereby depriving him of his constitutional right to confront the witnesses against him. For the reasons that follow, we reject these arguments and affirm the judgment of the trial court.

The following procedural history and facts, which the jury reasonably could have found, are relevant to this appeal. At the time of the events giving rise to the defendant's conviction, he was living in a home in Enfield with the victim, S.R., the victim's mother, S, and another female child, C. S had another child, A, who was older than the other children and who, at the time of S.R.'s molestation, was living out-of-state with her biological father. The defendant is the biological father of C, but not S.R. The defendant has known S.R. and been involved in her life since 2007 or 2008, although he did not live with her until late 2012 or early 2013, a few months before the molestation occurred. In the Enfield home, the defendant shared one bedroom with S, and the children shared another bedroom.

On the night of June 5, 2013, the defendant slept in the living room, rather than in the bedroom he shared with S. Sometime during the night, he entered the girls' bedroom, removed S.R.'s pants, and began touching and scratching her genitals, and digitally penetrating her. S.R. awoke during this assault and grabbed the defendant's arm, digging her fingernails in to it. The defendant continued to abuse S.R. in this manner. Eventually, he stopped, pulled up her pants, and left the room. S.R. reported this incident to S the next morning.

Thereafter, S awoke the defendant, who was still sleeping in another room, and confronted him with the allegations. The defendant replied, "You know, this isn't the first time that someone has said I've done this to them. A long time ago, my—my other daughter said I did the same thing to her but her mother didn't believe her."[1] The defendant stated he had never mentioned the prior allegations because, "Well [the girl's] mother didn't believe her, so I didn't think it was true, but now [S.R. is] the second person that says it now, so it must be true. It must be true."

Later that morning, S took S.R. to New England Urgent Care. S.R. was examined by Jeffery Sievering, a physician's assistant, who found that S.R.'s clitoris was enlarged, which was potentially indicative of "repeated trauma or manipulation." Thereafter, S took

S.R. to the Enfield Police Department and then to St. Francis Hospital in Hartford. At the hospital, a second medical examination was performed by Audrey B. Courtney, a nurse practitioner, using a sexual assault forensic collection kit. The medical examination did not produce information that either supported or refuted S.R.'s allegations. Courtney produced a report about this exam that included the statement, "[S] states that [the defendant's] [fifteen] year old daughter said the same thing happened to her." S.R. also underwent a forensic interview at the hospital in which she stated that the defendant had touched her in a similar manner on two prior occasions approximately one month earlier. At trial, S.R. testified that she had not reported the incidents to her mother because she feared she would not be believed. She stated that she had decided to tell her mother this time because she still felt pain the next morning.

David Thomas, a detective with the Enfield Police Department, observed the forensic interview and later made arrangements to meet with the defendant on June 10, 2013, at the New Haven Police Department, which was closer to the defendant's place of employment. During that meeting, Thomas asked whether S.R.'s allegations were true, and the defendant responded, "I can't say that she's lying," and that he did not remember the incident. The defendant also made other statements relevant to his claims in this appeal, including that he had been accused of similar conduct by a different stepdaughter from a prior relationship, and that S had observed A, who no longer lived with them, engaging in some kind of sexual conduct. At the end of the interview, the defendant signed a written statement that on the night in question, he had entered the bedroom and checked to see if S.R. had urinated in her bed.

A second interview was arranged between Thomas and the defendant to take place at the Manchester Police Department.[2] Because the defendant did not have a car, Thomas met the defendant at his workplace in North Haven to transport him to Manchester. In the car, before leaving, the defendant initiated a conversation by stating, "I must have done it." The defendant then alluded to a "sleepwalking type of thing where . . . sexual contact would happen." The defendant provided Thomas with a signed written statement regarding this conversation which stated, "I would like to give the Enfield police the following truthful statement. I would like to admit that there is a high probability that I inappropriately touched [S.R.] in her groin on Thursday morning, June 6, 2013."

The defendant was arrested on June 17, 2013, and charged with one count of sexual assault in the first degree in violation of General Statutes § 53a-70 and two counts of risk of injury to a child in violation of § 53-21 (a) (2). After a jury trial, the jury was unable to reach

a verdict on the charge of sexual assault in the first degree,[3] but returned guilty verdicts on the two charges of risk of injury to a child. Thereafter, the court sentenced the defendant to a total effective sentence of twenty-five years imprisonment followed by fifteen years of special parole with special conditions. This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the defendant argues that the prosecutor committed several improprieties that deprived him of a fair trial in violation of the due process clauses of the federal and state constitutions.[4] He also argues that he was deprived of his right to confront the witnesses against him under the federal and state constitutions.[5] The state responds that the defendant's arguments mischaracterize the prosecutor's conduct and other details of the case, and should be rejected. We disagree with the defendant and affirm the judgment of the trial court.

I

The defendant's claim that prosecutorial improprieties deprived him of a fair trial is composed of three distinct claims. First, he asserts that the state's attorney made an improper "golden rule" argument, which is an argument that appeals to emotion, during closing argument in asking the jury to consider whether the defendant's reaction to the allegations was consistent with innocence. Second, he claims that the state's attorney mischaracterized the medical testimony of Sievering during closing argument in a manner that suggested that sexual assault was *the cause* of certain physical symptoms Sievering had observed in S.R. rather than merely *a possible cause*. Third, he contends that the state's attorney improperly facilitated the admission into evidence of a medical report that contained prior misconduct evidence. He argues that these improprieties so infected the trial with unfairness as to make the resulting conviction a denial of due process. The state disagrees with the defendant's assertions that the prosecutor committed any improprieties. We will address each of these claims in turn, setting forth additional facts as necessary.[6]

We begin by setting forth our standard of review that is applicable to each of the defendant's prosecutorial impropriety claims. In analyzing claims that prosecutorial improprieties deprived a defendant of a fair trial, "we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 560–61, 34 A.3d 370 (2012). The two steps of this analysis are separate and distinct, and we may reject the claim if we conclude the defendant has failed to establish either prong. Id.

"[O]ur determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that misconduct was objected to at trial. . . . These factors include: the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 561. "[W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." Id., 562–63.[7]

A

The defendant first claims that he was deprived of a fair trial by an improper golden rule argument that the prosecutor made when she asked the jury to consider whether the defendant's reaction to the allegations was consistent with innocence. The following additional facts are relevant to this claim.

This claim concerns four statements made by the prosecutor during closing argument. First, the prosecutor commented on the defendant's first interview with the police: "[The defendant] says . . . 'I can't say that she's lying.' I want you to picture this. You have a child or a stepchild. The police come to you and say you went into that child's room in the middle of the night, pulled her pants down and you inappropriately touched them and digitally penetrated them. Would your response be 'I can't say she's lying?' Would that enter your mind?" Next, the prosecutor commented on the defendant's decision to go to work immediately after being accused of sexual assault: "[H]e's shocked that S.R.'s mother thought he wouldn't go to work. I mean, why wouldn't he go to work? Let's assume he did nothing wrong and these allegations were made and the child was concerned about this. Would you take it so lightly? Would it be so irrelevant to you?" The prosecutor's closing argument returned to the topic of the defendant's reaction, describing the defendant's response when the police asked him whether he had assaulted S.R.: "He even says after that, very shortly after about ten seconds later, 'Well, there is a way,' and then he sort of trails off. You're accused of this and your comment's going to be, 'Well, there is a way I could've done it?'" The prosecutor continued, commenting on the defendant's reaction to the police: "Look at that first state-

ment. He never denies the behavior. What he says is, 'I do not remember inappropriately touching S.R.' Would that ever be your response when confronted with something like this? I do not remember."

The defendant contends that these statements constituted an improper golden rule argument that personalized the case by asking the jurors to put themselves in the defendant's position. He argues that this undermined the fairness of the trial because it drew on the passions and prejudices of the jury by inviting the jurors to consider how they would react to such repugnant accusations. The state responds that a golden rule argument is not always improper and is particularly permissible where it simply asks jurors to draw inferences from the evidence presented based on the juror's judgment of how a reasonable person would act under the specified circumstances, which the state argues was the clear purpose of these comments. We agree with the state.

"[A] golden rule argument is one that urges jurors to put themselves in a particular party's place . . . or into a particular party's shoes. . . . The danger of these types of arguments lies in their [tendency] to pressure the jury to decide the issue of guilt . . . on considerations apart from the evidence of the defendant's culpability." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, 293 Conn. 31, 53–54, 975 A.2d 660 (2009). "[N]ot all arguments that ask jurors to place themselves in a particular party's situation implicate the prohibition on golden rule argument. . . . The animating principle behind the prohibition . . . is that jurors should be encouraged to decide cases on the basis of the facts as they find them, and reasonable inferences . . . rather than by any incitement to act out of passion or sympathy for or against any party. . . . [A] prosecutor does not violate the golden rule by . . . asking the jurors to place themselves in [a particular position] if the prosecutor is using these rhetorical devices to ask the jury to assess the evidence from the standpoint of a reasonable person or to employ common sense in evaluating the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 172 Conn. App. 820, 839–40, 162 A.3d 84 (2017). The prohibition on golden rule arguments is merely a subset of improper appeals to the jurors' emotions. Id., 837 n.9.

After carefully considering the record in this appeal, we conclude that the prosecutor's statements did not constitute an improper golden rule argument. Each of these statements called upon the jury to assess the reasonableness of certain conduct reflected in the evidence. This court previously has held that arguments inviting the jury to draw reasonable inferences from the evidence adduced at trial "patently are proper." *State* v. *Dawes*, 122 Conn. App. 303, 313–14, 999 A.2d

794, cert. denied, 298 Conn. 912, 4 A.3d 834 (2010). These were not improper appeals to passion or prejudice, but rather calls on the jurors to draw inferences from the evidence that had been presented at trial regarding the statements of the defendant, based on the jurors' judgment of how a reasonable person would act under the specified circumstances. See *State* v. *Williams*, supra, 172 Conn. App. 839–40 (asking jurors to step into role of defendant can be properly viewed as rhetorical device designed to urge measurement against a reasonable person).

When the prosecutor asked the jurors to put themselves in the defendant's position and to evaluate his statements against his claim of innocence, the prosecutor properly was asking the jurors whether a reasonable person in that situation would be likely to concede that there was a possibility that he sexually abused his stepdaughter if he were actually innocent. These statements were particularly appropriate as counterargument to the defendant's main defense theory, which was that he did not commit the crime and that the allegations were fabricated. Because we conclude that the prosecutor did not make an improper golden rule argument, we need not consider the second step of the analysis, namely, whether the alleged impropriety deprived the defendant of his due process right to a fair trial. See *State* v. *Hickey*, 135 Conn. App. 532, 553, 43 A.3d 701 (if impropriety is not identified, then prejudice need not be considered), cert. denied, 306 Conn. 901, 52 A.3d 728 (2012).

B

Next, the defendant contends that he was deprived of a fair trial because the prosecutor's description of certain medical testimony in his closing argument mischaracterized that testimony by using words that suggested sexual abuse was *the probable cause* of certain symptoms observed in S.R.'s genitals rather than merely *a possible cause*. The following additional facts are relevant to this claim.

On direct examination at trial, Sievering, the physician's assistant that first attended to S.R. on June 6, 2013, had the following exchange with the prosecutor regarding his examination of S.R.:

"Q. And what if any findings did you make in the exam?

"A. The only abnormality noted at the time was I found that the patient's clitoris seemed to be enlarged more so than I would expect for a patient . . . of that age.

"Q. And from your training and experience what would be a cause or causes of an enlarged clitoris in a seven year old?

"A. A cause could be from repeated trauma or manip-

ulation."

On cross-examination, Sievering had the following exchange with defense counsel:

"Q. And did you see . . . any redness or anything unusual other than—you testified in reference to the clitoris seemed to be enlarged? Is that correct?

"A. That's correct.

"Q. And that can be done by trauma or manipulation. Is that correct?

"A. That is correct.

"Q. Can it be done by self-manipulation?

"A. Yes.

"Q. And manipulation with toys?

"A. Yes."

Later, during closing argument, the prosecutor reminded the jury of Sievering's testimony, stating: "Mr. Sievering, who testifies he saw her that morning. This is a seven year old girl with an enlarged clitoris. He said likely cause could be rubbing it—a seven year old girl." During the state's rebuttal argument, the prosecutor returned to this testimony, commenting that: "You heard the testimony of the actual physician's assistant, Mr. Sievering, about the enlarged clitoris on a seven year old girl. One of the likely causes is rubbing of that area."

The defendant contends that the prosecutor substantively misstated Sievering's testimony in a manner that deprived him of a fair trial because the misstatement implied a stronger causal link between the observed medical evidence and the alleged crimes. He asserts that Sievering's testimony used the words "can" or "could" in stating that sexual assault could cause the physical condition observed. But in closing argument and rebuttal, the prosecutor used the word "likely" in this same context. He argues that the words used by Sievering denote a possibility of a causal link, while the prosecutor's word choice suggests a much stronger causal link such that a jury may view Sievering's testimony as evidence that the crime occurred. The state responds that the defendant's claim amounts to an isolated misstatement of the evidence, and that to find impropriety would require this court to minutely dissect each and every statement of the prosecutor. The state urges the court to follow the example of *State* v. *Orellana*, 89 Conn. App. 71, 105–106, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005), and decline to dissect each isolated statement made by the prosecutor in order to find impropriety. We agree with the state.

It is improper for a prosecutor to make comments during closing argument that suggest facts not in evidence. See *State* v. *LaVoie*, 158 Conn. App. 256, 275,

280, 118 A.3d 708 (comment that defendant said he intended to shoot victim was not supported by evidence or fair inferences and was therefore improper), cert. denied, 319 Conn. 929, 125 A.3d 203 (2015), cert. denied, U.S.      , 136 S. Ct. 1519, 194 L. Ed. 2d 604 (2016). "[T]he prosecutor [as a public officer] has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State* v. *Martinez*, 319 Conn. 712, 727, 127 A.3d 164 (2015). The privilege of counsel in addressing the jury through closing argument "must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) Id., 727–28. "[B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Chankar*, 173 Conn. App. 227, 249, 162 A.3d 756 (2017). "We do not scrutinize each individual comment [made by the prosecutor] in a vacuum, but rather we must review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Orellana*, supra, 89 Conn. App. 106.

In the present case, the prosecutor made two isolated misstatements that do not amount to improprieties. We are mindful that closing argument and closing rebuttal argument can require counsel to think on his feet and quickly recall and comment on evidence that was presented at trial, all while also reacting to arguments advanced by opposing counsel. Under such circumstances, it is appropriate that counsel be afforded some leeway for minor misstatements, such as occurred in the present case, in order to not impede counsel from zealously advocating for clients. *State* v. *Chankar*, supra, 173 Conn. App. 249. The minor misstatements that occurred here are within the leeway accorded counsel in closing argument where, in the heat of argument, counsel may be forgiven for hitting the nail slightly off center but not wholly inventing "facts." To conclude that these isolated misstatements constitute a prosecutorial impropriety and that the defendant suffered harm from them, we would need to minutely examine the prosecutor's word choice in a vacuum, ignoring the broader context of the whole trial. This is not an appropriate approach to such considerations. *State* v. *Orellana*, supra, 89 Conn. App. 106. When placed in the broader context of the trial, these statements are revealed to be isolated and minor. The jurors

heard Sievering's testimony as it was delivered and the defendant has not presented any evidence to support the conclusion that the prosecutor's misstatements caused confusion among the jurors or caused them to misunderstand Sievering's testimony.

Viewed in the larger context of the whole trial, we cannot conclude that these isolated and minor misstatements by the prosecutor constitute prosecutorial improprieties and we need not consider whether the alleged impropriety deprived the defendant of his due process right to a fair trial. See *State* v. *Hickey,* supra, 135 Conn. App. 553 (if impropriety is not identified, then prejudice need not be considered).

C

The defendant's final claim regarding prosecutorial improprieties is that the state's attorney deprived him of a fair trial by improperly facilitating the admission into evidence of a medical report that contained prior misconduct evidence. The following additional facts are relevant to this claim.

As previously explained, on June 6, 2013, S.R. was evaluated at St. Francis Hospital by Courtney, a nurse practitioner, using a sexual assault forensic evidence collection kit. Courtney produced a report about this examination that included the statement, "[S] states that [the defendant's] [fifteen] year old daughter said the same thing happened to her." The record indicates that S had reported to Courtney that the defendant's other stepdaughter, N, had made similar allegations of sexual abuse against the defendant.

At trial, the prosecutor informed the court that the state had no intention of presenting prior misconduct evidence. Although Courtney was a logical witness for the state to call, she was out-of-state and unavailable to testify at the time of trial. The court suggested that the parties agree to admit Courtney's report into evidence as a full exhibit in place of Courtney's testimony. Later in the day, the court revisited the issue asking counsel if they had an agreement regarding the report. The prosecutor replied that there was no agreement yet, and "I have to look at it again, but I don't think it has much of anything in it is the problem. It's not a . . . typical medical report." The parties then had an unrelated discussion before turning back to the report. At that time, both counsel stated they had no objection to admission of the report. Subsequently, during its charge to the jury, the court stated that the jury may treat S.R.'s statements to medical or mental health professionals as substantive evidence, and in doing so the court specifically highlighted Sievering's testimony and Courtney's report.

The defendant contends that the prosecutor's conduct was improper because he did not prevent the admission of Courtney's report, which contained an

accusation of prior misconduct, despite previous assurances that the state would not present such evidence. The defendant faults the court, the prosecutor, and his own counsel for the admission of this evidence, but argues that the primary blame rests with the prosecutor. He asserts that admission of the report was harmful because it informed the jury that the defendant's other stepdaughter, N, had accused him of abusing her in the same way. The state responds that the defendant has failed to cite any legal authority to support the contention that this situation constitutes a prosecutorial impropriety. In particular, the state argues that the defendant's claim should be rejected because he agreed to the admission of the report and made extensive use of the report to support his defense theory that the allegations were fabricated. Additionally, the state argues that the harm, if any, should be considered minimal because S also testified that the defendant had told her that his stepdaughter N had accused him of committing a similar assault. We agree with the state.

The presentation of prior misconduct evidence in sexual assault trials is not in and of itself improper. See *State* v. *DeJesus*, 288 Conn. 418, 473, 953 A.2d 45 (2008) (evidence of prior sexual misconduct admissible to establish defendant's "propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged"). The defendant has not claimed that this evidence was inadmissible, but rather that it was simply a prosecutorial impropriety to present this evidence after the prosecutor informed the court that he would not do so. The defendant cites no authority for his assertion that the prosecutor acted improperly. The report was admitted pursuant to an agreement of the parties, and at most indicates a degree of inattentiveness by both sides. The defendant's arguments are difficult to accept for two reasons. First, contrary to the defendant's claim, this report was not the only source of the jury's knowledge that the defendant had previously been accused of a similar assault by his other stepdaughter, N. S also testified that the defendant told her on the morning that S.R. was molested that N had previously accused him of touching her in the same way. Later, the defendant was given the opportunity to address these allegations on cross-examination and denied making the statement to S and denied that he had molested N. Second, the defendant made extensive use of this report in his closing argument. It is hard to square his use of the report at trial with his claims on appeal. The prosecutor's role in the admission of this report cannot be fairly characterized as prosecutorial impropriety. Because we conclude that this was not a prosecutorial impropriety, we need not consider whether the alleged impropriety deprived the defendant of his due process right to a fair trial. See *State* v. *Hickey*, supra, 135 Conn. App. 553 (if impropriety is not identified, then prejudice

need not be considered).

## II

The defendant next claims that the trial court deprived him of his right to confront and impeach the witnesses against him under the state and federal constitution[8] when the court precluded him from presenting testimony from other witnesses that he claims would have contradicted the testimony of S. The defendant's claim implicates two different witnesses: the defendant himself and L, a friend of S. After carefully considering the record in this matter, we decline to review the defendant's claim.

Regarding his claim concerning his own testimony, the record shows that the defendant presented a different legal argument to the trial court than he is pursuing in this appeal.[9] Therefore, we decline to review the defendant's claim regarding his own testimony because the trial court was not provided an opportunity to consider this argument. See *State* v. *Pagan*, 158 Conn. App. 620, 632–33, 119 A.3d 1259 ("[t]his court is not bound to consider claims of law not made at the trial. . . . Once counsel states the authority and ground of [his argument], any appeal will be limited to the ground asserted."), cert. denied, 319 Conn. 909, 123 A.3d 438 (2015).

Regarding the defendant's claim concerning the testimony of L, which was excluded under General Statues § 54-86f,[10] commonly known as the rape shield statute, we conclude that he has failed to challenge the ground on which the trial court ruled, and we therefore also decline to review this claim.[11] See *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017) ("[w]here an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse [finding not raised] with respect to those claims. . . . [W]hen an [appellant's claim] challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the [claim] is moot." [Citation omitted; internal quotation marks omitted.]).[12]

For the foregoing reasons, we conclude that the defendant was not deprived of his general due process right to a fair trial under the state and federal constitutions.

The judgment is affirmed.

In this opinion the other judges concurred.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The record indicates that the defendant's reference to "my other daughter" refers to his stepdaughter N, who is the biological daughter of his former wife.

[2] The record does not indicate why this interview occurred in Manchester.

[3] The state later entered a nolle prosequi as to the charge of sexual assault in the first degree.

[4] The constitution of Connecticut, article first, § 8, provides in pertinent part that, "[n]o person shall be . . . deprived of . . . liberty . . . without due process of law . . . ." The fourteenth amendment to the United States constitution provides in pertinent part: "[N]or shall any state deprive any person of life [or] liberty . . . without due process of law . . . ."

[5] The constitution of Connecticut, article first, § 8, provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ." The sixth amendment to the United States constitution, made applicable to the states by the due process clause of the fourteenth amendment to the United States constitution, provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[6] The defendant also argues that, even if these alleged improprieties singly did not deprive him of a fair trial, when taken together, the combined force of them did so taint the integrity of the trial that his right to a fair trial was violated. Because we conclude that the cited conduct does not constitute prosecutorial impropriety, we necessarily conclude also that the sum of this conduct did not violate his right to a fair trial.

[7] We note that the burden is different when the defendant invokes a specific constitutional right. "[C]onsistent with our [Supreme Court's] decisions in [*State* v. *Cassidy*, 236 Conn. 112, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996)] and [*State* v. *Angel T.*, 292 Conn. 262, 973 A.2d 1207 (2009)], if the defendant raises a claim that the prosecutorial improprieties infringed a specifically enumerated constitutional right, such as the fifth amendment right to remain silent or the sixth amendment right to confront one's accusers, and the defendant meets his burden of establishing the constitutional violation, the burden is then on the state to prove that the impropriety was harmless beyond a reasonable doubt." *State* v. *Payne*, supra, 303 Conn. 563.

[8] See footnote 5 of this opinion.

[9] At trial, the defendant argued that he should be permitted to testify regarding statements S allegedly made to him regarding sexual behavior S had observed occurring between A and S.R., as well as a transcript of text messages sent between the defendant and S, on the theory that they went to "motive, bias, prejudice, and interest." During the ensuing discussion, the court questioned the relevancy of the testimony and the text messages to these issues and ultimately concluded that this line of inquiry should be disallowed. Later that same day, the defendant asked the court to revisit its ruling on the text messages, but did not mention the defendant's testimony. The defendant then proceeded to argue that the text messages should be admissible because "the texts are inconsistent with [S's] testimony here—in court and contradictory, and can be considered an inconsistent statement." In this appeal, the defendant is now trying to apply this latter rationale to his testimony as well. The defendant's inconsistent statements argument was presented to the court only in relation to the text messages.

[10] General Statutes (Rev. to 2015) § 54-86f provides in relevant part that "[i]n any prosecution for sexual assault . . . no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. . . . If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[11] The trial court excluded L's testimony because it considered it "violative

of the rape shield statute. It is being offered for its truth, not merely to criticize the—or attack the credibility of [S]. Now, this is triple hearsay. . . . It is so far removed from anything that could be admitted as substantive evidence that it has little or no probative value and I will exclude it . . . ." The defendant faults this ruling as "recharacterizing" the purpose of his offering this evidence from one of impeachment, which he asserts would have been admissible, to one of substance. The record does not support this assertion. Before ruling, the trial court asked the defendant, "do you want to offer [L]'s testimony other than on the prior inconsistent statement [purpose]?" To which the defendant responded, "Yes, Your Honor," and "[t]o show a prior source of the sexual knowledge of a child, yes." On appeal, the defendant has simply asserted, with minimal citation to authority and no analysis, that the trial court "recharacterized" his purpose before he turns his argument to addressing the admissibility of the testimony as a prior inconsistent statement for the purposes of impeachment. He does not substantively challenge the ruling of the trial court that the evidence violates the rape shield statute. Accordingly, we decline to consider his argument that L's testimony is admissible as a prior inconsistent statement for the purpose of impeaching the credibility of S.

[12] Although we decline to address the defendant's legal arguments on this claim, we note that the record does not support the factual substance of his claim. When testifying, S was asked and answered questions regarding whether she had *personally observed* sexual interaction between S.R. and A, and whether she would report *her personal observations* to any person or entity. By contrast, L testified regarding S's statements about what a *school counselor had reported to S* and the fact that the *school counselor intended to report the information to the Department of Children and Families*. In fact, L testified that the school counselor's report was not based on any observation by the counselor, but rather was based on a statement S.R. had made to another school employee. It is not clear from L's testimony that anyone witnessed the alleged sexual interaction between S.R. and A, let alone whether S witnessed it.

———————————————————