******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TERRANCE L. RICE
(AC 37407)

Beach, Sheldon and Mullins, Js.

*Argued April 7—officially released August 16, 2016*

(Appeal from Superior Court, judicial district of New
Haven, B. Fischer, J.)

*James R. Vicario*, assigned counsel, for the appellant (defendant).

*Jennifer Stevens*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Jennifer Lindale*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Terrance L. Rice, appeals from the judgment of conviction, rendered after a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95 and breach of peace in the second degree in violation of General Statutes § 53a-181 (a) (1). He claims that (1) the state presented insufficient evidence to support his conviction, and (2) the court violated his right to confrontation by improperly limiting his cross-examination of a state's witness. We disagree, and affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history are relevant. On January 3, 2013, at approximately 11 p.m., Gina Phillips-Jackson was waiting for a train at Union Station in New Haven with her husband. She left her belongings with her husband and walked to the women's restroom. As she approached the restroom, she passed by the defendant, who was drinking from a nearby water fountain. The women's restroom contained several stalls, including a stall in the back for disabled persons. Phillips-Jackson initially proceeded to the stall in the back, but changed her mind. Turning around to exit the stall, she saw the defendant standing approximately two to three feet away from her. Phillips-Jackson informed the defendant that he was inside the women's restroom. The defendant responded, in a calm, quiet voice with a flat affect, "Come here," and he made a corresponding hand gesture.[1] The defendant then repeated the phrase to her more than once. Phillips-Jackson testified that in that moment she felt "nervous" and looked to the front entrance to the restroom for a way to "get out."

Without her consent, the defendant "grabbed" Phillips-Jackson's right hand, though not in a forceful manner, for approximately a second. Immediately she said "get off me"; then recoiled and "sprung around him." In doing so, she lost her balance and fell on her back. The defendant continued to stand near Phillips-Jackson and repeated the phrase "come here." At one point the defendant tried to quiet Phillips-Jackson by saying, "Shhh." Phillips-Jackson was in pain, and, screaming loudly, she began to crawl toward the exit using her elbows. Her screams prompted a security guard to come to her assistance.

Following a jury trial, the defendant was convicted of unlawful restraint in the first degree in violation of § 53a-95, and breach of peace in the second degree in violation of § 53a-181 (a) (1). The court imposed a total effective sentence of five years incarceration. This appeal followed.

I

The defendant first claims that there was insufficient evidence to support his conviction for unlawful restraint. Specifically, he claims there was insufficient

evidence as to the elements of (a) specific intent and (b) actual restraint.[2] We are not persuaded.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 151–52, 976 A.2d 678 (2009).

Section 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." "[T]he hallmark of an unlawful restraint . . . is a restraint." *State* v. *Salamon*, 287 Conn. 509, 530, 949 A.2d 1092 (2008). " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty . . . by confining him . . . in the place where the restriction commences . . . without consent. . . . ." General Statutes § 53a-91 (1).

### A

The defendant first claims that there was insufficient evidence to prove beyond a reasonable doubt that he had the requisite specific intent to restrain the victim.[3] We are not persuaded.

"[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [I]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, 110 Conn. App. 778, 791–92, 956 A.2d 1176, cert. denied,

289 Conn. 957, 961 A.2d 424 (2008).

"[U]nlawful restraint in the first degree is a specific intent crime . . . ." *State* v. *Salamon*, supra, 287 Conn. 570. "[Specific intent] is an intent to bring about a certain result." Id., 572. "[U]nlawful restraint in the first degree requires that a person have the specific intent to restrain the victim." *State* v. *Youngs*, 97 Conn. App. 348, 363, 904 A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006). Thus, to prove unlawful restraint, the "state was required to establish that the defendant had restricted the victim's movements intentionally and unlawfully in such a manner as to interfere substantially with her liberty by confining her without her consent." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Salamon*, supra, 573.

"Because direct evidence of an accused's state of mind typically is not available, his intent often must be inferred from his conduct, other circumstantial evidence and rational inferences that may be drawn therefrom. . . . . For example, intent may be inferred from the events leading up to, and immediately following, the conduct in question . . . the accused's physical acts and the general surrounding circumstances. . . . An accused's own words, however, constitute particularly compelling, direct evidence of his intent. . . . Finally, when a jury evaluates evidence of a defendant's intent, it properly rel[ies] on its common sense, experience and knowledge of human nature in drawing inferences and reaching conclusions of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Winot*, 294 Conn. 753, 768, 988 A.2d 188 (2010).

The defendant's testimony itself provided evidence of intent to restrain. The defendant testified that after having a cigarette outside on the platform, he picked up two of his bags, but forgot the third. He testified that he noticed the third bag was missing after he stopped at a drinking fountain near the women's restroom. He thought that Phillips-Jackson had taken his bag. He testified that, acting on that belief, he followed her into the restroom "[b]ecause somebody grabbed my bag and I've been robbed before. The first thing that came into my head, somebody got my bag and I want justice . . . . I want to find out . . . who got my bag." He further testified that he did not want the person who took his bag "to get away," but, rather, he wanted that person arrested. He testified that "[i]f anybody was running or trying to leave . . . . I wanted justice, I didn't want them to run, I wanted a cop to be around."

The jury additionally could have inferred from the defendant's conduct that he intended to cause the confinement of Phillips-Jackson. There was evidence that he briefly held Phillips-Jackson, that he blocked her egress from the restroom, and that he discouraged her from calling for help; this activity, moreover, occurred in a confined place out of public view.

The jury reasonably could have determined that the defendant's reportedly mistaken assumption that Phillips-Jackson had stolen his bag, coupled with his intention to locate the person who had stolen the bag and his desire not to let that person "get away," combined with actions consistent with an intent to restrain, demonstrated his intention to prevent Phillips-Jackson's liberation. The jury reasonably could have determined that he intentionally prevented Phillips-Jackson from exiting the restroom.

The defendant also argues that his only intention when he entered the restroom was to find his missing bag. Because of a speech impediment and an episode of diabetic shock, he claims that he had difficulty explaining his intent to Phillips-Jackson. Even if the jury credited his testimony regarding the speech impediment and diabetic shock, the jury nonetheless reasonably could have concluded that the defendant intended to prevent Phillips-Jackson's liberation, as these concepts are not inconsistent. He further contends that Phillips-Jackson never testified that she believed his intent was to restrain her from exiting the restroom and that holding Phillips-Jackson's hand for a moment is not inconsistent with an intent to find his missing bag. That Phillips-Jackson perhaps may have been unaware of the defendant's intent is immaterial; the defendant testified quite clearly as to his intent and the jury was free to credit that testimony.[4] See *State* v. *Goriss*, 108 Conn. App. 264, 269, 947 A.2d 1041 (noting jury's right to accept some, none or all of evidence presented), cert. denied, 289 Conn. 904, 957 A.2d 873 (2008).

B

The defendant contends that it was unreasonable for the jury to conclude that his brief grasping of Phillips-Jackson's hand satisfied the element of actual restraint.[5] In the context of this case, we need not decide whether a brief grasp is sufficient to constitute "restraint."[6] During the encounter, the defendant briefly grasped Phillips-Jackson's hand, but there was also more evidence that the jury could have considered.

Phillips-Jackson testified that when she turned around to leave the stall in the back of the restroom, the defendant was standing between her and the exit. She further testified that she informed the defendant that he was in the incorrect restroom. Instead of leaving upon being informed that he was in the women's restroom, the defendant stood between Phillips-Jackson and the exit and instructed her three times to "come here." During this encounter, the defendant was standing two to three feet from her, an arm's distance away. The jury reasonably could have concluded that the defendant effectively was blocking Phillips-Jackson from exiting the restroom, thereby constraining her lib-

erty of movement. Once Phillips-Jackson fell backwards and began screaming, the defendant's response was to whisper, "Shhhh."

In addition to the defendant's actions, there was evidence of the requisite intent, as set forth in part IA of this opinion. The duration of the confinement at issue is not in itself determinative of whether an unlawful restraint has occurred. Rather, the question is whether an actual restraint or confinement was accomplished with the requisite intent to prevent liberation. See *State* v. *Winot*, supra, 294 Conn. 762 (using definition of restraint under § 53a-91 [1] in the context of kidnapping). Evidence of the defendant's actions, coupled with evidence of intent to restrain, satisfies the element of "restraint."

## II

The defendant next claims that the court violated his right to confrontation by limiting his cross-examination of a state's witness. We disagree.

The defendant argues that the court improperly limited his cross-examination of Phillips-Jackson regarding a conversation she had with police concerning the charges brought against the defendant. Phillips-Jackson testified on cross-examination that she returned to Union Station shortly after the incident and, after inquiring, discovered what crimes the defendant had been charged with committing. Defense counsel further inquired, "[W]hen you went down there did you inquire as to what the charges were that were lodged against [the defendant]?" The state objected and the court sustained the objection on the basis that it was "not relevant to what this jury has to decide." After defense counsel asked to make a record, the court excused the jury. Defense counsel proceeded with his offer of proof by asking Phillips-Jackson what charges the police officer had told her had been brought against the defendant. She said she had been told "breach of peace." Defense counsel asked, "Did you indicate to him that you didn't believe those are the appropriate charges? Did you ask them to charge him with assault or anything like that?" Phillips-Jackson responded, "No, sir." Defense counsel argued that Phillips-Jackson's interest in the prosecution of the defendant and dissatisfaction with the minor nature of the charges were relevant to motive and bias and were appropriate subjects of cross-examination. The court sustained the state's objection.

"[T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and

prejudice is a matter of right and may not be unduly restricted. . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . We have emphasized in numerous decisions . . . that the confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. . . . [For example, a] defendant may elicit only relevant evidence through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross examination. Every reasonable pre-sumption should be made in favor of the correctness of the [trial] court's ruling . . . .

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant. . . . Relevance may be established in one of three ways. First, the proffering party can make an offer of proof. . . . Second, the record can itself be adequate to estab-lish the relevance of the proffered testimony. . . . Third, the proffering party can establish a proper foun-dation for the testimony by stating a good faith belief that there is an adequate factual basis for his or her inquiry." (Citations omitted; internal quotation marks omitted.) *State* v. *Benedict*, 313 Conn. 494, 510–11, 98 A.3d 42 (2014).

The defendant argues that the line of questioning regarding whether Phillips-Jackson inquired as to the charges brought against the defendant was relevant. He contends that Phillips-Jackson's return to Union Station days after the incident to learn of the charges brought against the defendant shows bias, in that the witness, rather than being objectively disinterested, wished to see the defendant punished rather severely. Further inquiry would have revealed, according to the defen-dant, that Phillips-Jackson was dissatisfied with the misdemeanor charges that originally were brought against the defendant.

Phillips-Jackson did testify on cross-examination in the presence of the jury and without objection that she returned to Union Station after the incident to find out what charges had been brought against the defendant. The defendant, however, was not permitted to question Phillips-Jackson regarding her satisfaction with the charges initially brought. The defendant's argument that

the court improperly limited cross-examination into Phillips-Jackson's dissatisfaction with the charges initially brought[7] against the defendant is negated by the fact that Phillips-Jackson did not testify during the offer of proof that she was, in fact, dissatisfied. Rather, during the proffer no facts were elicited that were probative of motive or bias. She testified in the course of the offer of proof that she did not indicate to officers at Union Station that she was dissatisfied with the charges initially brought and that she did not ask the officers to charge the defendant with assault or a similar felony. Accordingly, the defendant's right to confrontation was not violated and the court acted within its discretion in limiting this line of questioning. The questions themselves, of course, were not evidence. *State* v. *Bonsu*, 54 Conn. App. 229, 235, 734 A.2d 596 ("questions are not evidence"), cert. denied, 251 Conn. 909, 739 A.2d 1249 (1999).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant testified that he had a speech impediment which caused him to stutter, and his stuttering worsened when he was stressed. He also testified that he was diabetic and, at the time, had low blood sugar and was in shock.

[2] On appeal, the defendant challenges the sufficiency of the evidence only as to the elements of intent and physical restraint; thus, we confine our review to those elements.

[3] The defendant also argues that he did not intend harm; thus, there was insufficient evidence that he had the requisite intent. He cannot prevail on this argument because unlawful restraint requires proof of an intent to *restrain*, not proof of an intent to harm. See *State* v. *Youngs*, 97 Conn. App. 348, 363–65, 904 A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006).

[4] An intention to find a missing bag certainly can exist simultaneously with an intent to restrain.

[5] The defendant also argues that his actions did not constitute a restraint because he did not harm Phillips-Jackson. The defendant cannot prevail on this argument because the definition of "restrain" contains no requirement of harm. See General Statutes § 53a-91 (1).

[6] It is well established that there is no minimum period of time necessary to establish a restraint. *State* v. *Winot*, supra, 294 Conn. 761 (using definition of "restrain" under § 53a-91 [1] in context of kidnapping). Our Supreme Court in *State* v. *Salamon*, supra, 287 Conn. 532 n.21, however, noted that "there are conceivable factual situations in which charging a defendant with kidnapping based [on] the most minuscule . . . [duration of confinement] would result in an absurd and unconscionable result . . . . A challenge . . . predicated on such minuscule . . . duration of confinement remains viable on constitutional grounds under the vagueness doctrine." (Citations omitted; internal quotation marks omitted.) Unlawful restraint requires a "restraint" as defined by § 53a-91 (1). See *State* v. *Salamon*, supra, 530; General Statutes § 53a-91 (1). Kidnapping requires an abduction; *State* v. *Salamon*, supra, 533–36; which, according to § 53a-91 (2) requires a "restraint." This case does not involve a minuscule confinement, nor does the defendant claim constitutionally suspect vagueness.

[7] There was testimony at trial that the defendant was initially cited with breach of peace and criminal trespass.