******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* FREDRIK H.*

(AC 41448)

Lavine, Bright and Devlin, Js.

*Syllabus*

Convicted, following a jury trial, of the crimes of unlawful restraint in the
first degree, interfering with an emergency call, and criminal mischief
in the third degree, the defendant appealed to this court. The defendant's
conviction stemmed from an incident in which he argued with the victim,
his girlfriend. During the argument, the defendant grabbed the victim
by her neck and pushed her down onto the bed, and took her cell phone.
He then held the victim by her neck when she tried to exit the house
and slammed her onto the coffee table. On appeal, the defendant claimed
that there was insufficient evidence to prove he specifically intended
to restrain the victim and that the trial court improperly allowed the
state to introduce evidence of certain uncharged misconduct. *Held*:

1. The evidence presented at trial was sufficient to support the defendant's
conviction of unlawful restraint in the first degree; the jury could have
reasonably found that the defendant, in holding the victim down on the
bed by her neck to take her cell phone from her, intended to substantially
interfere with her liberty, and this intent was also apparent from the
defendant's actions in blocking the victim's access to a door and window
and grabbing her by the neck and throwing her onto the coffee table.

2. The trial court did not abuse its discretion in admitting evidence of
uncharged misconduct that occurred nine months after the incident
underlying his conviction; certain statements made by the defendant to
a detective about the victim, following his arrest for a separate incident
involving a different complainant who lived in the victim's new apart-
ment building, were probative of his motive and intent during the under-
lying incident because they revealed the defendant's ongoing hostility
toward the victim, they were not irrelevant merely because they occurred
nine months after the underlying incident and they were not unduly
prejudicial; moreover, evidence as to the contents of a gift bag in the
defendant's possession when he was arrested after the separate incident
was relevant and not overly prejudicial because it was the defendant's
description of the items in that bag, including a knife and rubber gloves,
that prompted the detective to ask the defendant if he intended to harm
the victim and led to the defendant's contested statements.

Argued February 4—officially released April 28, 2020

*Procedural History*

Substitute information charging the defendant with
the crimes of strangulation in the second degree, unlaw-
ful restraint in the first degree, interfering with an emer-
gency call, and criminal mischief in the third degree,
brought to the Superior Court in the judicial district of
Litchfield, geographical area number eighteen, and tried
to the jury before *Danaher, J.*; verdict of guilty of unlaw-
ful restraint in the first degree, interfering with an emer-
gency call, and criminal mischief in the third degree;
thereafter, the defendant was presented to the court,
*Danaher, J.*, on a plea of guilty to being a persistent
serious felony offender; judgment of guilty in accor-
dance with the verdict and the plea, from which the
defendant appealed to this court. *Affirmed.*

*Stephanie L. Evans*, assigned counsel, for the appel-
lant (defendant).

*Nancy L. Walker*, assistant state's attorney, with whom, on the brief, were *David S. Shepack*, former state's attorney, and *Gregory Borrelli*, assistant state's attorney, for the appellee (state).

*Opinion*

DEVLIN, J. The defendant, Fredrik H.,[1] appeals from the judgment of conviction, rendered after a jury trial, of unlawful restraint in violation of General Statutes § 53a-95 (a), interfering with an emergency call in violation of General Statutes § 53a-183b (a), and criminal mischief in violation of General Statutes § 53a-117 (a) (1) (A). On appeal, the defendant claims that (1) the evidence presented at trial was insufficient to prove that he specifically intended to restrain the victim, and (2) the trial court improperly allowed the state to introduce evidence of certain uncharged misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. As of April 23, 2015, the defendant and the victim were engaged and residing together in Torrington. The victim was supposed to pick the defendant up from work in Winsted at 6:30 p.m. with the vehicle that they shared, but, because she was running late, the defendant called her and angrily told her to "forget it" and that he would get another ride home. When the victim got home, she parked the car in the driveway, and the defendant came outside yelling at her. He opened the car door before she could do so, and then slammed it in her face. The defendant went into the house and the victim stayed in the car for "a little bit" to afford the defendant time to cool down.

The victim eventually went into the house, put some water in a pot on the stove to make herself some tea, and began to do the dishes while the defendant was in the shower. When the defendant came out of the shower, he continued to talk to the victim about not picking him up from work on time earlier that evening. The victim tried not to engage him, hoping not to make him angrier, but the defendant picked up the victim's laptop from the kitchen table and threw it into the living room. The victim and the defendant then started yelling at each other in the kitchen and the defendant took the pot of water off the stove and threw it toward the victim. Although the water splashed all over the floor, the victim was only splashed "a little bit" and was not injured.

The victim then told the defendant that she was going to call the police and she went into the bedroom to get her cell phone from her purse. The defendant followed her into the bedroom, grabbed her by the neck from behind, and pushed her down onto the bed. The defendant held the victim down on the bed while he was "looming over" her, with one hand on her neck, while she tried to flail her legs and hands to "get him off" of her. After a few seconds, the defendant "just stopped" and walked out of the bedroom with the victim's cell phone.

The victim then ran to the door in the kitchen to try to exit the house through a side entrance, but she was

unable to do so because the defendant "was right there next to [her]." While holding the victim against the door, the defendant put both of his hands around her neck and applied "a good amount" of pressure, such that the victim was not able to breathe, talk or "do much of anything." Eventually, the defendant again "just stopped" and the victim tried to get to the front door to get out of the house. The defendant followed the victim to the front door and blocked it so she could not get out. The victim then tried to get out through a window in the living room, but she became tangled in the curtains when the defendant tried to push her away from the window. While the victim was tangled in the curtains, the defendant grabbed her and picked her up by the neck and slammed her into the coffee table. The defendant told her that he was done with their relationship and left the room, at which time the victim was able to run out through the window.

The victim ran across the street to a nail salon, where she used the telephone to call 911. The defendant left the house. When the police arrived, they obtained a statement from the victim and took pictures of the victim's injuries, which included red marks on her neck and bruising on her back.

The victim called her mother and asked her to call the police when the defendant came home the following night because she did not want the defendant to hear her on the phone with the police. Upon learning that the victim had given the police a sworn statement regarding the incident that occurred the previous night, the defendant became angry and told the victim that she "needed to fix it" so that he would not be arrested.

On April 30, 2015, the defendant was arrested. By way of an amended long form information filed on October 11, 2017, the defendant was charged with strangulation in the second degree in violation of General Statutes § 53a-64bb (a), unlawful restraint in the first degree in violation of § 53a-95 (a), interfering with an emergency call in violation of § 53a-183b (a), and criminal mischief in the third degree violation of § 53a-117 (a) (1) (A). The jury found the defendant not guilty of strangulation, but guilty of the remaining charges. The defendant thereafter pleaded guilty to a part B information charging him with being a persistent serious felony offender under General Statutes § 53a-40 (c) and (k). The court imposed a total effective sentence of eleven years incarceration, execution suspended after ten years, followed by three years of probation. This appeal followed.

## I

The defendant first challenges the sufficiency of the evidence adduced at trial underlying his conviction of unlawful restraint in the first degree. Specifically, the defendant argues that the evidence was insufficient to

prove that he specifically intended to restrain the victim. We disagree.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015).

"A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury. General Statutes § 53a–95 (a). [T]he hallmark of an unlawful restraint . . . is a restraint. . . . As applicable to § 53a–95 (a), [p]ersons are restrained when their movements are intentionally restricted so as substantially to interfere with their liberty, either (1) by moving them from one place to another, or (2) by confining them either to the place where the restriction commences or to the place where they have been moved without their consent. General Statutes § 53a–91 (1). . . .

"Furthermore, unlawful restraint in the first degree requires that the defendant had the specific intent to restrain the victim. . . . Specific intent is an intent to bring about a certain result. . . . Thus, to prove unlawful restraint in the first degree, the state must also

establish that the defendant had restricted the victim's movements *intentionally and unlawfully* in such a manner as to interfere substantially with her liberty by confining her without her consent. . . .

"Because direct evidence of an accused's state of mind typically is not available, his intent often must be inferred from his conduct, other circumstantial evidence and rational inferences that may be drawn therefrom. . . . For example, intent may be inferred from the events leading up to, and immediately following, the conduct in question . . . the accused's physical acts and the general surrounding circumstances. . . . [W]hen a jury evaluates evidence of a defendant's intent, it properly rel[ies] on its common sense, experience and knowledge of human nature in drawing inferences and reaching conclusions of fact." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Williams*, 172 Conn. App. 820, 827–28, 162 A.3d 84, cert. denied, 326 Conn. 913, 173 A.3d 389 (2017).

Here, the state argued at trial that the defendant unlawfully restrained the victim in the bedroom when he held her down on the bed by putting his hand around her neck, and then again in the living room, when she tried to leave the house through the front door or window and he grabbed her by the neck and slammed her down onto the coffee table. The defendant contends that his intent in the bedroom was not to restrain the victim, but to take her cell phone away from her. Although the defendant did take the victim's cell phone from her, he did so after he pushed her down onto the bed and held her down by her neck while looming over her. While the defendant was holding the victim down on the bed by the neck, the victim was "flailing" to try to free herself. Although the defendant may have been holding the victim down because he was trying to get her phone from her, the jury reasonably could have found that he specifically intended to substantially interfere with her liberty in so doing. See *State* v. *Rice*, 167 Conn. App. 615, 622 n.4, 142 A.3d 1267 (one can have more than one intent at given time), cert. denied, 323 Conn. 932, 150 A.3d 232 (2016). The defendant's specific intent to substantially interfere with the victim's liberty is similarly apparent from his actions in the living room where he blocked her access to the door and window and then grabbed her by the neck and threw her onto the coffee table. The defendant contends that the victim only adopted the prosecutor's terminology in describing the defendant's actions of holding her down, pushing her and grabbing her. Of course, the jury heard the direct and cross-examination of the victim and was free to accept or reject the victim's characterization of the defendant's actions. Because we construe the evidence in the light most favorable to sustaining the verdict, the defendant's argument that the evidence could be viewed in a manner consistent with his version of the events is unavailing.[2]

## II

The defendant also claims that the trial court improperly allowed the state to introduce evidence of uncharged misconduct that occurred nine months after the incident underlying his conviction in this case. The defendant contends that the challenged evidence was irrelevant and unduly prejudicial to him and that its admission into evidence substantially affected the jury's verdict. We are not persuaded.

On October 11, 2017, the state filed a notice of its intent to offer misconduct evidence, specifically, the conduct of the defendant on January 7, 2016, and his statements to Detective Peter Dauphinais of the Bristol Police Department, concerning the victim in this case. On January 7, 2016, the defendant was arrested for a separate incident involving a different complainant, who lived in the victim's new apartment building.[3] During that incident, the defendant had brought a Christmas gift bag into the complainant's apartment and had discussed with her his relationship with the victim in this case. When Dauphinais asked the defendant about the gift bag, the defendant indicated that the bag contained a kitchen knife, rubber gloves, a syringe, and medication that he injects into his penis to achieve an erection. The defendant admitted that he brought the gift bag into the complainant's apartment on January 6, 2016, but told Dauphinais that the "contents of the bag were for [the victim in this case]." When Dauphinais asked the defendant if he intended to harm or hurt the victim in this case, the defendant became angry and responded: "[I] lost a house and three cars because of that little cunt, so what do you think I was going to do?" The state argued that the foregoing evidence was relevant to the defendant's intent, motive or malice toward the victim in this case.

On October 27, 2017, the court held a hearing on the state's proffered misconduct evidence, to which defense counsel orally objected. Defense counsel argued that the challenged statements could not have had any bearing on the defendant's alleged motive, intent or malice nine months earlier, and that the state could ask the victim about the financial distress that she and the defendant were experiencing. Defense counsel argued that the challenged statements were more prejudicial than probative because "[t]hey do create the impression that my client is a bad guy, despite what the state says. I think a jury would—be able to try to make a connection that [the defendant] had some negative intent, some . . . intention to cause harm . . . based on those two statements."

By way of a written decision filed on November 6, 2017, the court determined that the fact that the defendant was arrested in 2016 was irrelevant to this case and was more prejudicial than probative. The court

further found, however, that the defendant's statements to Dauphinais "reflect[ed] an animus by the defendant against [the victim] and for that reason alone are relevant to the question of whether the defendant specifically intended the actions alleged in the information." The court reasoned: "It is true that the statements postdated the events of 2015 and so could be interpreted as reflecting an animus that arose after the events of 2015, but the statements could also be readily interpreted to establish an ongoing animus that did not abate after the events of 2015, and so are relevant to the defendant's specific intent in 2015. The fact that both of the foregoing arguments can be made goes to the weight rather than the admissibility of the statements." The court further found that the statements were "also relevant to the issue of whether any of the defendant's actions in 2015 were a mistake or an accident. The objections that the statements are not relevant, and/or are more prejudicial than probative, are overruled."

As to the contents of the gift bag that the defendant admitted to carrying with him during the 2016 incident, the court determined that they "reflect 'acts' of a person, which when viewed in conjunction with the defendant's statement that those contents were 'for [the victim in this case]' constitute acts that meet several of the bases for admission identified in [§ 4-5 of the] Connecticut Code of Evidence . . . . All of the items, when viewed in the context of the balance of the evidence [that] the state indicates it will offer prior to the offer of the contents of the bag, constitute evidence of the defendant's specific intent at the 2015 event (and specific intent must be shown relative to each of the four counts in the information); they constitute evidence of malice toward [the victim in this case]; they show absence of mistake or accident relative to the events of 2015; and they will corroborate testimony that the state indicates it will offer." The court further explained: "For the defendant, in 2016, to travel to [the victim's] new apartment in another town, while in possession of a bag containing a knife, rubber gloves, and items related to sexual contact, all intended 'for [the victim],' arguably demonstrates the defendant's animosity toward [the victim] in 2016, and thus permitting the jury to conclude that he possessed such animosity in 2015." The court rejected the defendant's additional arguments that the challenged statements were irrelevant because he made them several months after the incident in this case and that the state could have introduced alternative evidence of the defendant's financial difficulties.

Finally, the court concluded that the defendant's statements to Dauphinais and the contents of the gift bag were not more prejudicial than probative. The court explained: "[T]he defendant's words, if introduced after the evidence of the defendant's acts [in this case], will not be more prejudicial than probative. . . . [W]ords are, by definition, less prejudicial than actions, at least

in this case. . . . Any concern that the evidence of the contents of the bag that the defendant brought 'for [the victim]' is more prejudicial than probative is mitigated, not only by the way the state will structure the introduction of the evidence, but also by a limiting instruction, making clear that the evidence is not being offered to suggest that the defendant committed any other offense relative to [the victim in this case], or that he intended to commit any such offense, but rather to support the state's claim that the defendant had the specific intent to commit the crimes charge[d], that he held malice toward [the victim] in 2015, and that his conduct in 2015 was not the product of accident or mistake." The defendant now challenges the admission of that evidence.

"Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . [Because] the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only [if] it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Abdus-Sabur*, 190 Conn. App. 589, 603–604, 211 A.3d 1039, cert. denied, 333 Conn. 911, 215 A.3d 735 (2019).

The defendant challenges the trial court's ruling on the grounds that the defendant's statements were irrelevant because they occurred nine months after the event underlying his convictions in this case and they involved issues that were unrelated to the event that provoked the defendant in the 2015 incident, namely, the victim's failure to pick him up from work on time. The defendant has not, however, provided any legal authority in support of his alleged requirement of temporal proximity. Indeed, the defendant's stated perception that the victim was responsible for his financial difficulties, which existed at the time of the 2015 incident, demonstrate that his animus toward the victim was ongoing. Likewise, although the 2015 incident was precipitated by the victim's lack of punctuality, she also testified that the argument on the night in question evolved into the

defendant's ongoing complaints about the victim's conduct throughout their relationship. We agree with the trial court that the defendant's statements in 2016 revealed the defendant's ongoing hostility toward the victim and were thus probative of his motive and intent in 2015.

The defendant also claims that the misconduct evidence was unduly prejudicial because it constituted inadmissible character or propensity evidence. To be sure, the challenged evidence did not paint the defendant in a positive light. We agree with the trial court, however, that the evidence of the defendant's statements to Dauphinais regarding his hostility toward the victim was minimally prejudicial relative to the defendant's uncontested conduct on the night of April 23, 2015.

As to the contents of the gift bag, it was the defendant's description of the contents that prompted Dauphinais to ask the defendant if he intended to harm the victim. This, in turn, led to the defendant's statements. Accordingly, the contents were relevant and not overly prejudicial. We thus conclude that the trial court did not abuse its discretion in admitting the misconduct evidence.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2012); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] We note that the defendant's first name has been spelled inconsistently in various court documents in this case. We use the spelling that is consistent with the original information.

[2] We further note that, although the state argued that the unlawful restraint occurred in the bedroom and the living room, the jury was entitled to consider the defendant's act of preventing the victim's escape through the kitchen door as evidence of his specific intent to substantially interfere with her liberty.

[3] The state did not seek to introduce evidence regarding the nature of the incident that gave rise to the defendant's January 7, 2016 arrest.

[4] Because we conclude that the trial court did not err in admitting the misconduct evidence, we do not reach the defendant's argument that he was harmed by its admission.