******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* FREDRIK HOLMGREN
(AC 43221)

Lavine, Bright and Devlin, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of home invasion, burglary in the first degree and sexual assault in the third degree in connection with an incident in which the defendant forced the victim into her apartment at knifepoint, forced her to undress and sexually assaulted her, the defendant appealed. *Held*:

1. The defendant could not prevail on his claim that the evidence presented at trial was insufficient to sustain his conviction of the charges of home invasion and burglary in the first degree:

   a. There was sufficient evidence to support the defendant's conviction of home invasion; contrary to the defendant's claim that the state failed to prove that he entered a dwelling while the victim was present in that dwelling, as required by the home invasion statute (§ 53a-100aa (a) (1)), because the victim was not actually present in her apartment when he entered it, the jury was entitled to credit the victim's testimony that she entered her apartment before the defendant and, therefore, was present in it when the defendant entered.

   b. The defendant's claim that the evidence underlying his conviction of burglary in the first degree was insufficient because the state failed to prove beyond a reasonable doubt that he entered the victim's apartment with the intent to commit a crime was unavailing; the jury reasonably could have inferred the defendant's intent to commit a sexual assault from the fact that he was in possession of a syringe and injectable erectile dysfunction medication when he unlawfully entered the victim's apartment, and there was no merit to the defendant's challenge to the permissibility of such an inference on the ground that he told a police detective that those items were intended to be used with his former girlfriend, as the jury was not required to credit the defendant's statement.

2. The defendant could not prevail on his claim that the trial court improperly allowed the state to introduce the testimony of a police detective regarding statements made by the defendant pertaining to a gift bag containing a syringe and injectable erectile dysfunction medication that he had with him in the victim's apartment, as the probative value of the gift bag evidence outweighed any undue prejudice caused to the defendant by its admission.

Argued February 4—officially released April 28, 2020

*Procedural History*

Substitute information charging the defendant with the crimes of home invasion, kidnapping in the first degree, burglary in the first degree and sexual assault in the third degree, brought to the Superior Court in the judicial district of New Britain and tried to the jury before *Graham, J.*; verdict and judgment of guilty of home invasion, burglary in the first degree and sexual assault in the third degree, from which the defendant appealed. *Affirmed*.

*Stephanie L. Evans*, assigned counsel, for the appellant (defendant).

*Samantha Oden*, deputy assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

DEVLIN, J. The defendant, Fredrik Holmgren, appeals from the judgment of conviction, rendered after a jury trial, of home invasion in violation of General Statutes § 53a-100aa (a) (1), burglary in the first degree in violation of General Statutes § 53a-101 (a) (3), and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B). On appeal, the defendant claims that (1) the evidence presented at trial was insufficient to sustain his conviction on the charges of home invasion and burglary in the first degree, and (2) the trial court improperly allowed the state to introduce irrelevant and prejudicial evidence of statements that he made to a police detective prior to his arrest. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 5:15 p.m. on January 6, 2016, the victim[1] returned to her apartment after work. Upon arriving, she noticed the defendant, whom she later recognized as the former boyfriend of one of her neighbors, standing toward the side of the building. After the victim entered the exterior door and into the lobby, the defendant came up behind her and put a knife to her back. The defendant forced the victim to walk across the lobby, where they reached another door, which was locked. The defendant then moved the knife to the victim's throat, and she screamed. The defendant told her that he would slit her throat if she continued to scream. With the defendant walking behind the victim and holding a knife to her throat, they proceeded to the victim's apartment. The victim unlocked her apartment door, and the defendant followed her inside.

After the defendant and the victim entered her apartment, the victim told him to take anything that he wanted. She began talking to him to try to calm him down, and he eventually removed the knife from her throat, and, after approximately one hour, he put it on top of the refrigerator. The victim observed that, in addition to the knife, the defendant also had a gift bag with him that contained a syringe. The defendant told the victim that he used the syringe "to inject himself because he had a hard time getting it up." The defendant instructed the victim to remove her clothes. Because she was "afraid for [her] life," she began to do so, and then he finished undressing her. The defendant started touching the victim and told her that she was beautiful. The defendant also removed his clothes, and they got onto the bed. The defendant touched the victim "everywhere," including her buttocks, and he licked her breasts. After being on the bed for approximately two hours, the defendant removed the syringe from the gift bag, went into the bathroom, and injected himself.

After several hours, the victim claimed that she had cramps, went into the bathroom, and "curled up in the

fetal position . . . in hopes that it would get [the defendant] just to leave and at least not touch [her] anymore." Over the course of the several hours that the defendant remained in the victim's apartment, the victim told him repeatedly that she wanted him to leave. At approximately 12:30 a.m., the defendant left the victim's apartment. Before he left, the defendant made the victim promise that she would not "call the cops on him and that [she] would just let him walk away . . . ."

After the defendant left, the victim was fearful that he might be waiting outside of her apartment, so she did not call anybody. She remained awake for the next six hours until she got up from her bed and went to work. One of the victim's coworkers asked her if something was wrong, and the victim "just collapsed [to] the floor and lost it." The police were called, and the victim was transported to a hospital where she underwent a physical examination and a sexual assault evidence collection kit was administered. The victim's breasts were swabbed for saliva and subsequent testing revealed that it matched the defendant's DNA.

The victim first spoke to the police at the hospital and then again at the police station later that evening. She was shown a photographic array that included a photograph of the defendant, whom she identified as her assailant with 100 percent certainty.

A few hours later, Detective Peter Dauphinais of the Bristol Police Department and three additional members of the department located and spoke to the defendant at his sister's residence. Dauphinais asked the defendant about the gift bag that he had while at the victim's apartment, and the defendant told him that it had contained a kitchen knife, rubber gloves, syringes and erectile dysfunction medication. The defendant told Dauphinais that he had brought the gift bag for his former girlfriend and that he discarded it on Route 8 after he left the victim's apartment. The defendant consented to a search of his home, where the officers recovered syringes and injectable erectile dysfunction medication.

The defendant was arrested and charged, by way of a substitute long form information, with home invasion in violation of § 53a-100aa (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), burglary in the first degree in violation of § 53a-101 (a) (3), and sexual assault in the third degree in violation of § 53a-72a (a) (1) (B). The jury found the defendant not guilty of kidnapping in the first degree but guilty of the remaining charges. The court imposed a total effective sentence of twenty-five years of incarceration. This appeal followed.

I

The defendant first claims that the evidence adduced at trial was insufficient to sustain his conviction on

the charges of home invasion and burglary in the first degree. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015). With these principles in mind, we address each of the defendant's sufficiency claims.

A

Section 53a-100aa (a) provides in relevant part: "A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and, in the course of committing the offense: (1) Acting either alone or with one or more persons, such person or another participant in the crime commits or attempts to commit a felony against the person of another person other than a participant in the crime who is actually present in such dwelling . . . ." General Statutes § 53a-100 (a) (2) defines a dwelling as "a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present . . . ."

In challenging the evidentiary sufficiency of his con-

viction of home invasion, the defendant argues that the state failed to prove that he entered a dwelling in violation of § 53a-100aa (a) (1) while the victim was present in that dwelling. Specifically, he contends that the victim was not "actually present" in her apartment when he entered it because he either had dragged her into the apartment or they entered simultaneously. This argument is belied by the victim's testimony that "[t]he way that [the defendant] was dragging me because I had to open my apartment, I entered, I was in first." The victim confirmed that she was "in [her] apartment before [the defendant] came into the apartment." Because the jury was entitled to credit the victim's testimony that she entered her apartment before the defendant, the defendant's argument that the evidence underlying his conviction of home invasion was insufficient because the victim was not actually present in her apartment when he entered fails.[2]

B

Section 53a-101 (a) (3) provides that "[a] person is guilty of burglary in the first degree when . . . such person enters or remains unlawfully in a dwelling at night with intent to commit a crime therein." The defendant argues that the state failed to prove beyond a reasonable doubt that he entered the victim's apartment with the intent to commit a crime. We are not persuaded.

"Because direct evidence of an accused's state of mind typically is not available, his intent often must be inferred from his conduct, other circumstantial evidence and rational inferences that may be drawn therefrom. . . . For example, intent may be inferred from the events leading up to, and immediately following, the conduct in question . . . the accused's physical acts and the general surrounding circumstances. . . . [W]hen a jury evaluates evidence of a defendant's intent, it properly rel[ies] on its common sense, experience and knowledge of human nature in drawing inferences and reaching conclusions of fact." (Internal quotation marks omitted.) *State* v. *Williams*, 172 Conn. App. 820, 829, 162 A.3d 84, cert. denied, 326 Conn. 913, 173 A.3d 389 (2017).

Here, the state charged the defendant with unlawfully entering the victim's apartment with the intent to kidnap her or to sexually assault her. The jury reasonably could have inferred the defendant's intent to commit a sexual assault from the fact that he was in possession of a syringe and injectable erectile dysfunction medication when he unlawfully entered the victim's apartment. The defendant challenges the permissibility of such an inference on the ground that he told Dauphinais that the syringe and erectile dysfunction medication were intended for his use with his former girlfriend. The jury, however, was not required to credit the defendant's statement and was, therefore, free to infer that his pos-

session of those items when he forced the victim into her apartment at knifepoint evinced his intent to sexually assault the victim. Accordingly, the defendant's claim that the evidence underlying his conviction of burglary in the first degree was insufficient is unavailing.

## II

The defendant also claims that the trial court improperly allowed the state to introduce Dauphinais' testimony regarding the defendant's statements pertaining to the gift bag that he had with him in the victim's apartment because it was irrelevant and unduly prejudicial. We disagree.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Sampson*, 174 Conn. App. 624, 635–36, 166 A.3d 1, cert. denied, 327 Conn. 920, 171 A.3d 57 (2017). "Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Allen*, 140 Conn. App. 423, 439–40, 59 A.3d 351, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

Here, it cannot reasonably be argued that the defendant's possession of injectable erectile dysfunction medication and a syringe at the time that he entered the victim's apartment was not probative of his intent to commit sexual assault. The defendant argues, as he did before the trial court, that the gift bag was irrelevant because he told Dauphinais that its contents were

intended to be used with his former girlfriend, not with the victim. We agree with the trial court's ruling that neither it nor the jury was "obligated to accept the defendant's postincident characterization of whom the [gift] bag was intended for . . . ." Because the defendant's challenge to the evidence pertaining to the gift bag and its contents is premised on his misapprehension that the court was bound by his stated intended use of the contents of the gift bag, his claim that the evidence was irrelevant is without merit. Furthermore, although the evidence of his possession of those items was damaging to him, it was not likely to have aroused the emotions of the jurors any more than the evidence that the defendant had forced the victim into her apartment at knifepoint, where he forced her to undress and remained against her wishes for several hours. We agree with the trial court's conclusion that probative value of the gift bag evidence outweighed any prejudice caused to the defendant by its admission.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] In *State* v. *Gemmell*, 151 Conn. App. 590, 607, 94 A.3d 1253, cert. denied, 314 Conn. 915, 100 A.3d 405 (2014), this court affirmed a conviction of home invasion in a similar situation in which the defendant unlawfully entered the victim's apartment or dwelling after he struggled with her and pushed her into her apartment.